Carey *vs.* Hoxey *et al.*

---

No. 75.—Edward Carey, assignee, &c. plaintiff in error, *vs.* Thomas Hoxey and others, defendants in error.

[1.] The general rule in Equity is, that all persons materially interested, either legally or beneficially, in the subject matter of a suit, are to be made parties, either as plaintiffs or defendants, however numerous they may be.

[2.] There are, however, exceptions.   When the parties are beyond the jurisdiction, or are so numerous that it is impossible to join them all, a Court of Chancery will make such a decree as it can without them.

[3.] *Numerousness* does not always and necessarily constitute an exception, but if the parties in interest are so very numerous that to join them would be impracticable without almost interminable delays and other inconveniences which would obstruct and probably defeat the purposes of justice, it is an exception to the general rule.

[4.] The death of a party, when parties are numerous, will not authorize the

Carey *vs.* Hoxey *et al.*

plaintiff to proceed, until his representatives are made parties, unless the numerousness is exceedingly great, and the deaths so frequent that the delays incident to making parties, become almost interminable, and obstruct greatly the purposes of justice.

[5.] In cases where the parties are numerous, and the representation of a deceased party is suspended by litigation, an exception is made, and the Court will proceed to a decree, if it can be done without prejudice.

[6.] To make the pendency of litigation touching the representation of a deceased party an exception to the rule, the Court must be fully advised by allegations in the bill, or by proofs, of the nature and condition of the litigation.

[7.] Whether a case comes within any of the exceptions growing out of numerousness, deaths of parties, and litigation touching the representation, is for the Chancellor to determine, in the exercise of a sound discretion, in view of the circumstances of cases, as they arise.

In Equity, in Muscogee Superior Court. Decision by Judge IVERSON. May Term, 1852.

This bill was filed by Carey, as assignee, against several defendants, stockholders in the Chattahoochee Railroad and Banking Company. At May Term, 1852, counsel for complainant moved the Court for leave to strike out the name of John W. Sutlive, one of the defendants, and to dismiss the bill as to him, upon the following showing:

1st. The affidavit of Wm. B. Stokes, one of complainant's counsel, that he had been informed and believed that Sutlive was dead, and had no legal representative in this State.

2d. The evidence of H. J. Devon, and others, that Sutlive died four or five years ago; left a will, and his wife executrix; who qualified, and shortly thereafter married; that her husband had not taken letters on the estate, nor had they been granted to any one a year ago; that there was now a pending litigation as to the administration on the estate of Sutlive ; and that witness had seen a notice published for letters on the estate of Sutlive.

The Court refused to grant the motion, and this decision is assigned as error.

W. DOUGHERTY, for plaintiff in error.

H. HOLT and BENNING, for defendants in error.

*By the Court.*—NISBET, J. delivering the opinion.

To a correct understanding of the question of Equity practice made in this record, it is necessary to state, that the bill was filed by *Edward Carey, assignee* of the *Bank of Columbus*, against the stockholders of the *Chattahoochee Railroad and Banking Company*, an extinct corporation, for the purpose of enforcing the payment of a large debt alleged to be due to the *Bank of Columbus*, as holder of the bills of the *Chattahoochee R. R. and Banking Company*. It seeks to enforce upon the stockholders a liability for the bills issued by the *C. R. R. and B. Co.* by virtue of a special clause in the charter of that Company, and at the same time to call in and apply to their payment the unpaid stock, according to the number of the shares held by the stockholders respectively. With such objects in view, a large number of persons, charged to be stockholders in the *C. R. R. and Banking Co.* are made parties defendants, and the bill asks that others when ascertained may be made parties. The cause coming on to be heard before the Chancellor below, the counsel for the complainant moved to strike from the bill, the name of John W. Sutlive, one of the defendants, and that the bill be dismissed as to him, upon the exhibition of the following proofs, to wit: "that John W. Sutlive is dead, and that he has no legal representative in this State; that he died some four or five years since, leaving a will in which he appointed his wife executrix, who was qualified some six or eight months after his death; that she had married a man by the name of Munford, who is still living, and who had not taken letters on the estate of Sutlive; that they had not been granted to any one about a year since, and that the administration on his estate was in litigation on the question whether Mrs. Sutlive was, or was not, the representative; that suits were pending against Munford, as *executor de son tort.*" One of the witnesses further stated to the Court, that he thought he had recently seen a notice published, that some one had applied for letters of administration on his estate. The presiding

Judge refused the motion, and his decision, in so doing, is assigned for error.

[1.] The question is, whether, under these circumstances, the bill could be dismissed as to Sutlive, and the complainant proceed against the other parties defendants. And this depends upon the question whether the representative of the estate of the deceased Sutlive, is a necessary party. We are thus called upon to consider the general rule as to parties in Equity, and its exceptions, and particularly to inquire whether the facts proven bring this case within any one of such exceptions. The general rule in Equity is, that all persons materially interested, either legally or beneficially, in the subject matter of a suit, are to be made parties to it, either as plaintiffs or defendants, however numerous they may be. This rule prevents multiplicity of suits, by enabling the Court to decree at once upon the rights of all the parties interested. When all the parties are before the Court, with the privilege of being heard, the Court is enabled to see the whole merits of the case; no one's rights are adjudged behind his back, and comprehensive justice can be administered. *Palk vs. Clinton*, 12 *Vesey*, 53, 54. *Hicock vs. Scribner*, 3 *Johns. Cas.* 311, 315, 317, 319. *Ivy vs. Watts*, 1 *Wash. C. R.* 517. *Caldwell vs. Togart*, 4 *Peters*, 190. *Wendell vs. Van Ransallier*, 1 *Johns. Ch. R.* 349. *Calvert on Parties, ch.* 1, §1, *p.* 1, 2. 13 *Peters*, 6, 14. 2 *Brock's R.* 20. *Story's Eq. Plead.* §72.

[2.] The exceptions to this rule are founded upon the reasons which sustain it. Without exceptions the rule would defeat its own objects, and prevent the ends for which it exists. There are cases in which, if enforced strictly, it would make impotent the remedial jurisdiction of Chancery. If in any case parties complainants were compelled necessarily to bring before the Court all who are interested, before they could be heard and their rights determined; then it is clear, that cases may occur, must occur, in which they never could be heard and in which their rights never could be adjudicated, because they are cases in which it is impossible to make all who are interested parties. The hands of Chancery are not tied by an impracticable rule. The general rule is established for the convenient administration

of justice.    It will not therefore be enforced, when its applica-
tion being impracticable, it will *prevent* the administration of
justice.    The exceptions are founded in the necessity, either that
the Court must wholly deny to the plaintiff the relief he asks,
and to which he is entitled, or grant it without making all who are
interested parties and the latter course is adopted, as involving
the least evil—taking care always to protect, as far as possible,
the rights of the absent.    The principle of the general rule, says
Lord *Eldon*, in *Cockburn vs. Thompson*, being founded in concur-
rence, a departure from it has been said to be justifiable, when
necessary.    And in all these cases, the Court has not hesitated
to depart from it, with the view, by original and subsequent ar-
rangement, to do all that can be done for the purposes of justice,
rather than hold that no justice shall subsist among persons who
may have entered into these contracts. (16 *Vesey*, 329.)  With
a clear strong light, Judge *Story*, in *Wood vs. Dummer*, thus exhib-
its the rule and its exceptions, and the principle upon which they
rest.    The general rule is, that all persons materially interested,
either as plaintiffs or defendants, are to be made parties.    There
are exceptions just as old and as well founded as the rule itself.
Where the parties are beyond the jurisdiction, or are so numer-
ous that it is impossible to join them all, a Court of Chancery
will make such a decree as it can without them.    Its object is to
administer justice, and it will not suffer a rule founded in its own
sense of propriety and convenience, to become the instrument of
a denial of justice to persons before the Court, who are entitled
to relief.    What is practicable to bring all interests before it,
will be done.    What is impracticable or impossible, it has not
the rashness to attempt ; but it contents itself with disposing of
the equities before it, leaving as far as it may, the rights of
others unprejudiced." (3 *Mason's R.* 317.)  The rules of prac-
tice are under the control of the Courts.    Both right and justice
require that the one now being considered, remain steadfast ; yet
the Courts are at liberty to make exceptions, whenever the vary-
ing phases of civilization require them to be made.    That this re-
mark may not be set down as demonstrative of a rash spirit of
innovation, I refer to Lord *Cottenham* as authority for a like sug-

gestion.   He says that it is the duty of a Court of Equity to adapt its practice and course of proceeding, as far as possible, to the existing state of society, and to apply its jurisdiction to all new cases, which, from the progress daily making in the affairs of men, must continually arise, and not from too strict an adherence to forms and rules established under different circumstances, to decline to administer justice and to enforce rights, for which there is no other remedy.  *More vs. Malachy,* 1 *Mylne & Craig R.* 559.   *Story's Eq. Plead.* §76.

No case better illustrates both the rule and the exceptions than this case.   The stockholders to the *Chattahoochee Railroad and Banking Co.* are very numerous.   Some of them may be out of the jurisdiction—others dead, having left insolvent estates, whilst the representation of the estates of others who are dead, may be suspended by litigation at law ; and other causes might exist, which would make it impossible or impracticable to bring them all before the Court.   To require the plaintiff to stay his suit, to postpone his rights, until all are made parties, would be a virtual denial of them ; and yet being all liable to contribute to the payment of his claim, if established, and having rights *inter sese,* which ought to be considered in the decree, there is the most obvious propriety in bringing them all in, if practicable.   After all that has been said, it is manifest that any relaxation of the rule must rest within the sound discretion of the Chancellor, under the circumstances of cases, as they arise.

(*See Boisguard et al. vs. Wall,* 1 *Smedes and Marshall's Chancery Reps.* 426, 427.)

Without farther reveiw of this question at large, I proceed to inquire, whether under any one of the exceptions, it was competent to dismiss this bill as to the estate of Sutlive.

[3.] It is argued that the *numerousness* of the parties defendants will authorize the dismission of this party from the record. *Numerousness* does constitute an exception ; but only when the parties in interest are so very numerous, that to join them, would be impracticable, without almost interminable delays and other inconveniences which would obstruct, and probably defeat the purposes of justice.  Numbers, therefore are not without more,

Carey *vs.* Hoxey *et al.*

sufficient to ground an exception upon. *Numerousness* must exist to that extent which involves the application of the rule in the consequences stated, to wit : almost *interminable* delays, and other inconveniences which would *obstruct, and probably defeat* the purposes of justice. *Mitford's Eq. Pl. by Jeremy,* 165, 167. *Story's Eq. Pl.* §94. 2 *Mason's R.* 192. 11 *Vesey,* 429. 16 *Ibid,* 321. 1 *Johns. Ch. R.* 349. 4 *M. and C.* 134. 1 *Ibid,* 559. 3 *Younge and Call,* 224, *note.*

There is no evidence in this record that such consequences would flow from adherence to the rule in this cause. Indeed from aught that appears, all the parties in interest were made parties to the bill—one having died, the question is whether it is indispensable to make his representative a party.

[4.] Again, it is insisted that the death of a party, where parties are numerous, should of itself make an exception. The contrary has been decided by the *Supreme Court of the United States,* in *Manderville vs. Riggs,* 2 *Peters,* 482. The death of a party ordinarily stays a suit until his representatives are made parties. Numbers cannot, singly considered, take a case out of the rule. Yet I am very clear, that when the numerousness is exceedingly great, and the deaths so frequent that the delays incident to making parties, become almost interminable, and obstruct greatly the purposes of justice, the death of parties alone, might justify a Chancellor in the exercise of a sound discretion, in proceeding with the cause without their representatives being brought upon the record. To lay down a definite rule, under this specific head, would be an unwarrantable attempt. There is not enough, however, of the element of numerousness, or of frequency of deaths apparent in the case now made, to justify us in dispensing with the usual course, simply because a party has died. It does not appear but that this is the first and only death that has occurred among the defendants to this bill. What may occur in the future, and what course may hereafter be proper in this cause, may be well left for futurity to develope.

[5.] With greater confidence and stronger reason the learned counsel holds, that when the representation of the estate of a

deceased party is suspended by litigation in the Court having jurisdiction of that question, and there are numerous parties in the cause, the complainant ought not to be constrained to await the result of that litigation, but ought to be permitted to dismiss his bill as to such deceased party and proceed. If the representative of a deceased person be a necessary party, and the bill charges that there is no such representative in existence, and that the representation is in litigation, an exception is made, and the Court will retain the bill and proceed to a decree, if it can be done without prejudice. 1 *Mitf. Eq. Pl. by Jeremy,* 180. *Cooper's Eq. Pl.* 35. 2 *Vesey and B.* 85. 3 *Mad. R.* 1. *Story's Eq. Pl.* §91.

[6.] Instead of allegations to the effect stated in this bill, the facts are, upon this motion, brought before the Court by proofs. They are, that Sutlive has been dead four or five years; that he left a will, and appointed his wife executrix; that she qualified and intermarried with one *Munford,* who is still living, and who has not taken out letters on Sutliv's estate, nor had any other person a year ago; the representation on his estate was in litigation, on the question whether Mrs. Sutlive was or was not the representative; that suits are pending against Munford, as *executor de son tort.* Mr. Devon, one of the witnesses, stated also that he had recently seen a notice published, that some one had applied for letters on his estate. It must be conceded, that a pretty strong case is made in favor of the motion. *No representation had been taken out a year ago—Sutlive has been dead four or five years, and the administration on his estate in litigation.* I feel that it requires " straining " to enforce the rule here. I should do myself great injustice if I failed to say, that I entertain some doubt. My learned brothers are without doubt. We are however, agreed that the evidence as to the pending litigation is not so full and satisfactory as to permit us, upon the whole, to sustain the complainant's motion. It does not appear that the complainant has made any efforts to procure a representation of this estate. To prevent delays in the settlement of estates, and delays in the prosecution of suits, our Statutes authorize creditors to take out letters; they also authorize the Court of Ordi-

Carey *vs.* Hoxey *et al.*

nary, upon thirty days' notice of the death and intestacy of a person, and that no person has applied for letters, to appoint the Clerk administrator. Upon like terms, no doubt, the Clerk may be appointed administrator, with the will annexed, in cases of testacy. *Cobb's N. Dig.* 303, 318, 319, 331.

Ordinarily, therefore, it is competent for a party to force an administration ; not of course when the administration is in litigation. It seems but reasonable, notwithstanding the evidence of the pending litigation, that the complainant should have shown some diligence in procuring a representation of Sutlive's estate. As to the litigation itself, we are not informed distinctly as to its character. The witness says that the administration was in litigation, on the question whether Mrs. Sutlive was or was not the representative of the estate. We are not informed how it originated—whether collaterally, in a suit pending against her, as executrix, or directly, upon an application to the Ordinary, for letters by some third person, with the will annexed—how long it had existed, and when it was likely to terminate. As this motion, as before stated, is addressed to the discretion of the Chancellor, his mind and conscience ought to be instructed as to the whole merits of the application, else he cannot exercise that discretion wisely.

[7.] There is some evidence too, that application had been recently made for letters. Mr. Devon states that he had seen a notice of such application. Upon the supposition that this is true, it is a fair inference that ere long the estate will be represented ; and in that event the complainant will not be defeated in his justice by *interminable* postponement. Sitting as we do, as an appellate tribunal, we are slow to control a matter within the discretion of the Court below, and affirm the judgement.