19697. SWIFT *et al. v.* WELLINGTON PLAZA, INC., *et al.*

ARGUED MAY 16, 1957—DECIDED JUNE 11, 1957—REHEARING DENIED JULY 3, 1957.

*Jack G. McKay, J. Gordon Young,* for plaintiffs in error.

*Foley, Chappell, Kelly & Champion, Moise, Post & Gardner, Young & Hollis, Howell Hollis, Powell, Goldstein, Frazer & Murphy,* contra.

ALMAND, Justice. The case before us is one assigning error on judgments sustaining the several general demurrers to an equitable petition filed by E. W. Swift, Jr., and two corporations (Swift Construction Company and Colonial Realty & Insurance Company), which are substantially owned and controlled by

him, against Wellington Plaza, Inc., B. Thorpe & Company; The Fourth National Bank of Columbus, Colonial Homes, Inc., Benjamin Thorpe, and The First National Bank of Atlanta (the last three named defendants being nonresidents of Muscogee County), in which petition the plaintiffs sought to cancel certain deeds conveying real estate and corporate stocks, and to cancel certain exclusive management contracts between Wellington Plaza and B. Thorpe & Company.

The allegations of the petition, though vague and indefinite in many respects, made the following case: In 1954, the plaintiffs began the construction of a shopping-center just outside the corporate limits of the City of Columbus. Financing arrangements for the construction of this shopping center had been made with The First National Bank of Atlanta, and in order to secure the bank's loan, the plaintiffs had conveyed to the bank the real estate upon which the center was being built, and, as additional collateral, the plaintiffs had pledged certain textile stocks, a warehouse, and a one-third interest in the Swift Building in Columbus. In June, 1955, during the construction of the shopping center, the plaintiffs ran out of funds. They were in default in their payments to the contractors, materialmen, and other creditors in an amount exceeding $200,000. The plaintiffs sought an individual lender or investor who could obtain additional money for the completion of the shopping center. They employed the defendant Benjamin Thorpe, whose investigation disclosed that the plaintiffs had a high and valuable equity in the center, and that relatively little additional capital was needed to complete its construction. As The First National Bank, holding a first lien on the shopping center, was the key to the financial difficulty, Thorpe sought and obtained an agreement with the bank—such agreement being approved by the plaintiffs—whereby a corporation to be known as Wellington Plaza, Inc., would be created; Thorpe would then purchase from Colonial Realty & Insurance Company the shopping-center property, subject to the bank's lien, and purchase from Swift Construction Company the common stock of Colonial Homes, Inc., subject to the bank's lien, both for the sum of $100,000; the sellers (the plaintiffs) would, in turn, pay this sum to the bank on their indebtedness;

Thorpe would then convey to Wellington Plaza, Inc., all of the property that the plaintiffs had conveyed to him, taking the note of Wellington Plaza for $100,000 with interest at 5%, and a security deed subject to the lien held by the bank. Wellington Plaza, Inc., would then assume the plaintiff's remaining indebtedness to the bank. Thorpe also agreed to advance to Wellington Plaza a sum not less than $200,000 and other amounts for which he would receive interest at 5%. The First National Bank committed itself to advance to Wellington Plaza, after the payment of the existing debts for labor and material in a sum in excess of $100,000 had been made, certain stipulated amounts for the completion of the plaza construction, provided that the limit of the aggregate indebtedness did not exceed $1,500,000. Under this agreement, Wellington Plaza was to complete the construction of the center; and, except for the payment of the prosecution of the construction, the servicing of the debt to the bank, the payment of salaries to its officers, and the payment of commissions on its rentals, no payment to the stockholders of Wellington Plaza, Inc., would be made until the debt to the bank was paid in full.

Thereafter, the terms of the agreement between the bank and Thorpe were carried out. The plaintiff Colonial Realty & Insance Company conveyed to Thorpe the real estate upon which the shopping center was being built, and the plaintiff Swift Construction Company transferred to Thorpe all shares of Class A and Class B stock in Colonial Homes, Inc. Wellington Plaza was incorporated, one-half of the capital stock going to the Fourth National Bank of Columbus, as trustee under the will of E. W. Swift, Sr., and the other half going to Thorpe. All of the real estate and the stocks which were conveyed to Thorpe were, in turn, conveyed by him to Wellington Plaza, Inc. On August 9, 1956, in order to secure its note to Thorpe in the sum of $450,000 with interest at 5% per annum, Wellington Plaza executed a deed conveying the real estate of the center to him as security for the payment of the debt, subject to the loan deed held by the bank. The indebtedness of the plaintiffs to The First National Bank in the sum of $100,000 was satisfied; through the sale of the collateral of the plaintiffs by The First National Bank, obligations due to contractors and materialmen

in excess of $100,000 were paid; and, from all that appears in the petition, the construction of the shopping center was completed. Wellington Plaza entered into a contract with B. Thorpe & Company, giving it a 25-year exclusive management contract for the shopping center, and Colonial Homes, Inc., made a similar contract with B. Thorpe & Company for its exclusive management for a period of 10 years, both contracts providing for a commission of 5% on all rentals. Salaries of $10,000 per year were to be paid to plaintiff Swift and to defendant Thorpe.

It is charged that all of these transactions were part of a usurious scheme on the part of Benjamin Thorpe; and the plaintiffs pray that all of the transactions between Thorpe and The First National Bank, between the plaintiffs and Thorpe, between Wellington Plaza and Colonial Homes, and between Benjamin Thorpe and B. Thorpe & Company, be set aside and declared void. It is not charged that the plaintiffs parted with their properties by reason of any fraudulent acts of the defendants. The charge is that the debt of Wellington Plaza to Benjamin Thorpe is infected with usury by reason of the agreement to pay the 5% rental commission from both Wellington Plaza and Colonial Homes, in addition to the 5% interest on the loans made by Thorpe, and because Thorpe received additionally one-half interest in Wellington Plaza, Inc., and therefore all of the transactions between the parties should be canceled. Whether or not the petition is sufficient to charge usury need not be decided, for the reason that the plaintiffs are not in a position to challenge the validity of the transactions between Wellington Plaza and any of the defendants, it appearing that the plaintiffs are not parties to any of the loan transactions wherein it is claimed that usury was exacted. The plea of usury is personal and no one can plead it but the borrower and his privies. *Scott* v. *Williams,* 100 *Ga.* 540 (28 S. E. 243, 62 Am. St. R. 340); *Ryan* v. *American Freehold Land Mortgage Co.,* 96 *Ga.* 322 (23 S. E. 411); *Long* v. *Gresham,* 148 *Ga.* 170, 172 (96 S. E. 211). There are no allegations which disclose that the plaintiffs are indebted to any of the defendants, but, on the contrary, it appears that by absolute deed, they conveyed all of their interest in the shopping center to Thorpe, who in turn conveyed it to Wellington Plaza, and that

the plaintiffs were relieved of their debts to The First National Bank of Atlanta and did not become indebted to Thorpe in any amount. Whether or not the defendant Thorpe, by reason of the financial distress of the plaintiffs, exacted a high price for his help and the result has been unprofitable to the plaintiffs, the terms of the agreements between the parties were clear, explicit, and definite, and there is no charge that the ultimate purposes and ends of the agreements have not been carried out to the letter. There are no allegations in the petition which would authorize a court of equity to undo the several transactions between the parties, which were carried out according to the terms of the agreements, and which were freely and voluntarily entered into by the plaintiffs.

The petition failing to set forth a cause of action against any defendant, the trial court did not err in sustaining the general demurrers filed by each of the defendants.

*Judgment affirmed. All the Justices concur.*