70154. FORD MOTOR CREDIT COMPANY v. LONDON.
(332 SE2d 345)

BEASLEY, Judge.

Appellee London filed a complaint against appellant Ford Motor Credit Company alleging that Ford, among other violations of plaintiff's rights, had violated the Georgia Motor Vehicle Sales Finance Act (OCGA § 10-1-30 et seq.) for a number of years by accelerating

motor vehicle installment contracts according to the "Rule of 78" method when it should have computed interest on a pro rata method. She sought also to press the complaint as a class action under OCGA § 9-11-23 on behalf of herself and all others similarly situated.

In its answer, defendant objected to the suit proceeding as a class action, stating several grounds: a number of questions of law and fact are not common and the common questions do not predominate; plaintiff's claims are not typical of those of the class; plaintiff does not fairly and adequately protect the interests of other class members; many of the class members' claims are barred by the statute of limitations; plaintiff lacks financial ability to fairly and adequately protect class members' interests; usury claims are personal and cannot be pursued by class action; defendant would be denied due process if a class action were maintained; a class action is not appropriate for the collection of statutory penalties nor a superior method of adjudicating the type of class claims asserted here; and most importantly to our consideration, "a class action would not be manageable."

No motion was made by plaintiff to have the case proceed as a class action. Instead, plaintiff's discovery proceeded by way of interrogatories and request for production of documents. Seeking to ascertain the size of the potential class, certain of London's interrogatories asked Ford to state the total number of persons with whom Ford had identical sales contracts and who had been sent identical or similar repossession notices (Interrogatory 13) and identical or similar form collection letters (Interrogatory 14). She also asked for the total number of persons who had signed sum-of-the-digits installment contracts with defendant in Georgia since 1967 and had subsequently received the repossession notice and/or collection letter or to whose loans the sum-of-the-digits method of rebate had been applied (Interrogatory 17). She asked for "your best estimate" if "a particular number" could not be given as to these several questions (Interrogatory 18).

Ford objected to these questions on the grounds that Interrogatory 17 was vague and confusing as well as irrelevant due to the statute of limitations, and that all three were unduly burdensome and oppressive, but that it was attempting to gather information as to the first two and would give it within a reasonable time if it became available. Ford also sought a protective order to limit discovery to class issues, and plaintiff moved to compel.

The trial court combined both motions and orally ordered Ford to answer certain interrogatories but gave a protective order in regard to issues going to the merits of the case.

Ford timely supplemented its earlier answers and gave an estimate of "at least 5,100" for the interrogatory regarding the number who had identical sales contracts and identical or similar repossession notices (Interrogatory 13), and an estimate of "at least 1,800" for the

interrogatory regarding the number who had identical sales contracts and identical or similar collection notices (Interrogatory 14). It explained how it arrived at its estimates and stated that it would cost about $20,000 to obtain a precise number as to Interrogatory 13 and $20,000 to $30,000 for Interrogatory 17; it set out the difficulties involved but offered to do the search if plaintiff paid.

London filed a second motion to compel, following which defendant took plaintiff's deposition. At the hearing on the motion, the trial court rejected Ford's arguments that good faith estimates were given as called for and that if exactitude were necessary the costs of this discovery relating exclusively to class "certification" issues should be borne by the plaintiff. It ordered Ford to fully and specifically give the total number of persons meeting the characteristics for each of the three interrogatories in approximately two months time.

Upon Ford's application for interlocutory review, this appeal was granted. *Held:*

As it relates to this case, OCGA § 9-11-23 (a) provides: "If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly ensure the adequate representation of all may, on behalf of all, bring . . . an action when the character of the right sought to be enforced for . . . the class is: (1) . . . common. . . ." Plaintiff's complaint alleges that she is similarly situated to all these borrowers who have been rebated the wrong amount and that "an adjudication of the common questions of law and fact will be dispositive of the issue of improper interest rebates for all such individuals." Although Georgia's statute differs substantially from the correlative Federal Rule 23, and our statute does not expressly embrace claims of such character, it has been construed to authorize class actions where the rights are several and where there are common questions of law or fact involved. *Ga. Investment Co. v. Norman,* 229 Ga. 160 (190 SE2d 48) (1972). "The character of the right sought to be enforced may be common although the facts may be different as to each member of the alleged class. The rights may be several in that each member of the alleged class is dependent upon a different factual situation to establish his right to prevail, yet they may be of a common character." Id. at 162.

Whether to allow a case to proceed as a class action in Georgia is a matter of discretion with the trial judge. *Hill v. Gen. Fin. Corp.,* 144 Ga. App. 434, 436 (241 SE2d 282) (1977). Class actions were originally a device in equity but, with the passage of the Civil Practice Act, they are allowed in pursuit of legal claims as well. OCGA § 9-11-23 makes no distinction. 10A EGL, Equity, §§ 39, 134, 142, 237. See also *Liner v. City of Rossville,* 212 Ga. 664 (3) (94 SE2d 862) (1956). It stems from the equitable doctrine that members of a numerous class may be represented by a few of the class. 10A EGL, supra at § 39. Numer-

ousness is thus the threshold factor, the sine qua non for class actions. If the number is so large that each cannot practically represent himself, either in the same or in separate lawsuits, then the court may allow this representative suit to bind all, if the other factors to be considered favor it. As said in *Carey v. Hoxey*, 11 Ga. 645 (2, 3) (1852), when the "numerousness" of parties makes it impracticable without great delay and other inconveniences to join them all, which would obstruct and probably defeat the purposes of justice, a court of equity will proceed to decree without them.

In *Sta-Power Indus. v. Avant*, 134 Ga. App. 952 (216 SE2d 897) (1975), a class of 253 Georgia residents who purchased distributor agreements was sufficiently numerous to warrant allowing as class action a suit charging violation of state securities law. That case pointed out that numbers as small as 25 and 40 have been deemed sufficiently large to warrant class actions.

Here, defendant admits that the size of the group plaintiff seeks to speak for is large, when it states that "a class action would not be manageable." Moreover, it gave its reasoned estimates, which is all that was called for by Interrogatory 18. Thus, the threshold of numerousness has clearly been met. Plaintiff alleged that the number is large, defendant answered that it is indeed, and yet the court compels defendant to expend thousands of dollars to produce an *exact* number. It is totally unnecessary. Not only did the interrogatories advise that estimates would be sufficient, but precise numbers would not be crucial to a determination of numerousness. Thus we find that the court abused its discretion in compelling defendant to conduct the search, at its undeniably great expense, to aid plaintiff to establish the class she wishes to represent.

We note further that the complaint provides that "Plaintiff will undertake discovery to determine the number of such individuals." Then she insisted that defendant do so, and that it do so at its expense. In *Hill v. Gen. Fin. Corp.*, supra at 436, the court noted that "the entity seeking to represent the alleged class must mail an initial notice of the alleged class action to each member of such class."[1] It then pointed out that financial responsibility for the costs which the representative must assume is a factor to be considered in allowing or refusing class action status.

The number of class members and the financial ability of plaintiff are not the only factors which the trial court must take into account. The court must also weigh, even if the right sought to be enforced is "common" to the members, whether "individual questions of

---

[1] Although our statute does not require it, the court did, citing *Eisen v. Carlisle & Jacquelin*, 417 U. S. 156, 173 (94 SC 2140, 40 LE2d 732) (1974).

law or fact as between the defendant and the individual class plaintiffs would yet predominate." *Hill v. Gen. Fin. Corp.*, supra at 436.

"Common questions of law and fact *predominate . . .* when action is brought on behalf of purchasers of [identical] agreements from a common source, the character of the right sought to be enforced is common, and common relief is sought. . . . Minor variations in amount of damages, or location within the state, do not destroy the class when the legal issues are common." *Sta-Power Indus.*, supra at 954. (Emphasis supplied.) The *Hill* case gives other factors: the fact of counterclaims, as exists here; the fact that individual damages would have to be assessed in each of the myriad cases; the fact that the charge of usury "is personal and no one can plead it but the borrower and his privies" (*Swift v. Wellington Plaza, Inc.*, 213 Ga. 377, 380 (99 SE2d 68) (1957)). The *Sta-Power Indus.* case at page 955, considered yet others. And in *Williams v. Cox Enterprises*, 159 Ga. App. 333, 336 (5) (283 SE2d 367) (1981), the court said "[a] class action is particularly inappropriate under such circumstances," i.e., where the "claims must be assessed on an individual basis, as must the amount of their damages in the event any of them can establish a cause of action against the [defendant]." Some actions, of course, are precluded by law from being pursued as class actions. See, e.g., OCGA § 7-3-29 (e), as to the Georgia Industrial Loan Act. This proscription was applied in *Motor Finance Co. v. Harris*, 150 Ga. App. 762 (1) (258 SE2d 628) (1979). See also OCGA § 7-4-5 (b) as to claims of usury in real estate loans.

Of course, this case has not yet reached the point of weighing the factors. Plaintiff is just attempting to marshal the ingredients needed to obtain class action status. She has not moved to have the action so certified, which she must do or it will not become one. Although the opinion in *Murphy v. Hope*, 229 Ga. 836 (195 SE2d 24) (1972) infers that the filing of a suit claiming it to be a class action makes it one without further ado so that dismissal or compromise cannot be undertaken thereafter by plaintiff without the approval of the court pursuant to subsection (e) of the class action statute, and our statute contains no court "certification" procedures as set out in Federal Rule 23, the case of *Executrix of Estate of Seamans v. True*, 247 Ga. 721 (1) (279 SE2d 447) (1981) requires it to be done. However, if the issue comes up by way of a defendant's motion to dismiss those portions of the claim seeking class action relief as in *Ga. Investment Co. v. Norman*, supra at 160, then of course a plaintiff's motion would be superfluous. The point is that it is up to the court whether the suit shall proceed as a class action, and without the court's approval, which requires the exercise of discretion giving heed to the appropriate legal factors, it may not. The requisites for a class action must first be met, and determining the "propriety" of such is the first issue before the

· court. *Sta-Power Indus. v. Avant*, supra at 954.

Judgment reversed. *Deen, P. J., and Pope, J., concur.*

DECIDED JUNE 4, 1985.

*Stephen H. Block, Morton P. Levine, Thomas B. Buck III*, for appellant.

*Peter J. Anderson, Roy H. Meeks, Jr., Carlton M. Henson II*, for appellee.