**Jannette S. LEE, formerly known as Jannette S. Williamson, Individually and On Behalf of All Other Similarly Situated Persons, Plaintiff,**

v.

**CRITERION INSURANCE COMPANY, Defendant.**

No. CV486–314.

United States District Court,
S.D. Georgia,
Savannah Division.

May 5, 1987.

W. Douglas Adams, Brunswick, Ga., for plaintiff.

John E. Bumgartner, Brunswick, Ga., for defendant.

ORDER

EDENFIELD, District Judge.

The case at bar, the third in a series of lawsuits brought by plaintiff Jannette S. Lee against defendant Criterion, involves the alleged breach of an insurance contract. Defendant, contending that the action is barred on the ground of *res judicata*, has filed a motion for summary judgment; defendant also has requested that sanctions be imposed pursuant to *Fed.R. Civ.P.* 11. For reasons only slightly different from those advanced by defendant, the Court finds the motion for summary judgment to be meritorious and the request for sanctions well-founded.

## I. FACTS

### A. *Prior Litigation*

On September 5, 1982, plaintiff was involved in an automobile accident, as a result of which she allegedly sustained disabling injuries and incurred medical expenses. Plaintiff was insured by the defendant insurance company. Because defendant allegedly failed to pay in a timely fashion certain medical bills submitted to it by plaintiff during the early months of 1983, plaintiff brought suit, on March 16, 1983, in the Superior Court of Glynn County, Georgia. In her complaint, plaintiff contended that defendant's acts violated § 33–34–6 of the Official Code of Georgia, which mandates payment of no-fault benefits "within 30 days after the insurer receives reasonable proof of the fact and the amount of loss sustained...." The same code section provides that an insured may bring suit against its insurance carrier for violation of the statute. In any such action, if it is shown that an insurance company has failed to pay benefits within thirty days after proof of loss, and if the carrier does not raise or cannot prove the affirmative defense of good faith, the defendant company may be held liable to the insured for certain specified penalties and attorney's fees. O.C.G.A. § 33–34–6 provides additionally that where benefits are not paid within *sixty* days after proof of loss, insurance companies may be held liable for punitive damages. Pursuant to the statute, plaintiff sought to recover penalties, attorney's fees and punitive damages from the defendant.

Just prior to trial, the state court ruled on an objection that had been lodged by the defendant. According to the defendant, the Georgia Court of Appeals decision in *Falagian v. Leader Nat'l Insurance Co.,* 167 Ga.App. 800, 307 S.E.2d 698 (1983), mandated that the scope of the litigation should be strictly limited, such that the only determination to be made by the jury would be whether defendant had failed to pay claims with respect to which proof of loss had been provided to the defendant more than thirty days prior to the filing of the action. The court ruled in defendant's favor, and limited the scope of the proceedings accordingly. As a result of the court's ruling, plaintiff was precluded from litigating the question whether defendant had wrongfully delayed in paying benefits the proof of loss as to which was provided to defendant after the cut-off date thirty days prior to trial. The ruling also precluded resolution of questions concerning plaintiff's alleged disability.

The jury found that plaintiff was entitled to additional benefits of $927.36, for payment of a hospital bill that had been submitted to the defendant more than thirty days prior to trial. The jury found, however, that defendant had acted in good faith, and that therefore no penalties or attorney's fees should be awarded. The Superior Court entered judgment on the jury verdict on November 19, 1985.

On October 28, 1985, plaintiff filed suit, in connection with the same September 1982 automobile accident, in the Brunswick Division of the United States District Court for the Southern District of Georgia. The case was assigned to Judge Alaimo.

Plaintiff alleged in her federal-court complaint that the accident had rendered her totally disabled. Plaintiff further contended that, while defendant recently had made certain payments to her, it had refused to pay additional benefits for the stated reason its disbursements to date had actually exceeded the limit of plaintiff's coverage. Defendant claimed the coverage limit to be $5,000; plaintiff contended that she was in fact entitled to coverage up to $50,000, by virtue of alleged deficiencies in the applica-

tion for the insurance policy. In addition to the disability benefits allegedly due her, plaintiff sought, as she had in state court, penalties, attorney's fees, and punitive damages under O.C.G.A. § 33–34–6 on the basis of defendant's alleged bad faith refusal to tender timely payments.

In contrast to her state-court complaint, plaintiff's federal-court complaint included class action allegations, and did not include a jury trial request. Defendant moved to dismiss the class action allegations; that motion was granted by Judge Alaimo on December 26, 1985, on the ground that the requirements of *Fed.R.Civ.P.* 23 had not been met. Apparently, the omission of a jury request from plaintiff's complaint was not intentional, for plaintiff made an out-of-time motion for jury trial. That motion was denied on January 21, 1986. Ultimately, however, the Court impanelled an advisory jury pursuant to *Fed.R.Civ.P.* 39. The case went to trial before Judge Alaimo and the advisory jury in July, 1986.

It should be noted that during the trial before the Brunswick Division Court plaintiff testified, in response to a question from defense counsel, that she had been rendered totally disabled as a result of the September 1982 automobile accident from March 23, 1983 (the date on which plaintiff quit her job as a toll booth attendant) up to and through the date of trial. Plaintiff's proposed findings of fact, however, indicate that plaintiff sought to establish only that she had been disabled from March 23, 1983 "through thirty days prior to the filing of [the Brunswick Division] action." This limitation was included in plaintiff's proposed findings in accordance with the holding of the *Falagian* case, *see supra.*

On July 17, 1986 the advisory jury found in favor of the plaintiff and proposed an award of $5,500 in additional benefits, and a total of $21,500 in penalties, attorney's fees, and punitive damages.

Shortly thereafter, on August 6, 1986, plaintiff filed suit in the Superior Court of Liberty County, Georgia. Plaintiff once again alleged that she had been rendered totally disabled as a result of the September 1982 automobile accident. In her com-

plaint, however, plaintiff stated the period of her disability as running from October 28, 1985 (the date of filing of the Brunswick Division federal-court complaint) through the date of filing in the Liberty County Superior Court. Plaintiff's complaint included class action allegations.

On September 3, 1986, Judge Alaimo entered his findings of fact and conclusions of law in the Brunswick Division case. Notwithstanding that Judge Alaimo agreed that plaintiff's coverage limit was $50,000, he otherwise rejected the findings of the advisory jury and found, *inter alia:* that plaintiff's testimony was not credible; that the injuries, if any, sustained by plaintiff in the September 1982 automobile accident were relatively minor; that plaintiff had quit her job as a toll booth attendant in March, 1983 for reasons unrelated to any disabling physical condition; that plaintiff had been paid all sums due her under the insurance policy issued by the defendant, and; that plaintiff had fully and permanently recovered from any injury she might have suffered as a result of the mentioned accident.

On the day following the entrance of Judge Alaimo's findings, September 4, 1986, defendant removed the instant action from the Liberty County Superior Court to the Savannah Division of this Court. On September 11, 1986 defendant moved for summary judgment on the ground of *res judicata.*

## B. *CV 486-314*

Upon removal, this case was initially assigned to Judge Alaimo; it was reassigned to this Court, however, on October 20, 1986, and came up on the calendar for mandatory status conference on March 20, 1987.

A review of the pleadings prior to the conference raised serious doubts in the Court's mind as to the merits of and motives behind the case *sub judice.* Accordingly, at the status conference, the Court warned plaintiff's counsel in no uncertain terms that defendant's motion for summary judgment appeared meritorious, and that plaintiff might well be facing the im-

position of sanctions under *Fed.R.Civ.P.* 11. However, because the facts surrounding the two previous lawsuits brought in connection with the September 1982 automobile accident appeared complex, the Court invited the parties to submit a detailed chronology of the litigation, and briefs dealing further with the merits of the case (as well as with the appropriateness of Rule 11 sanctions). The parties accepted the invitation.

Defendant's position, in essence, is as follows: 1) plaintiff's testimony at trial in the Brunswick Division conclusively establishes that the matters litigated in that prior action encompassed plaintiff's claim of disability *up to and including the date of trial* (July 17, 1986), and therefore the instant action (in which benefits are claimed for a period running from October 28, 1985 forward) is barred by *res judicata* principles regardless of the date suit was filed; 2) even assuming that plaintiff had some arguable justification for bringing this action on August 6, 1986 (after the advisory jury had "found" in favor of plaintiff in the Brunswick Division), plaintiff should not have persisted in pressing her claim after September 3, 1986 (the date on which Judge Alaimo ruled adversely to plaintiff), because Judge Alaimo's ultimate findings (that plaintiff had suffered no disabling injury in the automobile accident, that she had been paid all sums due her under the insurance policy, and that she had fully and permanently recovered as of the date of trial in July, 1986 from any injuries she might have sustained) have *res judicata* effect, barring all subsequent claims arising out of the incident in question, and; 3) Judge Alaimo's January, 1986 dismissal of plaintiff's class action allegations for failure to meet the prerequisites of *Fed.R.Civ.P.* 23 similarly has *res judicata* effect, and therefore plaintiff was barred from including class action allegations in a subsequent complaint. Defendant seeks Rule 11 sanctions in connection with all of the enumerated allegations.

Plaintiff argues, essentially, that: 1) the instant action is not barred by principles of *res judicata* because it involves a claim

separate from that litigated in the Brunswick case, i.e., because the period of disability alleged in each action is different (in this regard, plaintiff emphasizes that she has been forced to bring repetitive actions by virtue of defendant's insistence that the *Falagian* case bars consideration by a court, in an action brought under O.C.G.A. § 33–34–6, of claims relating to benefits the proof of loss as to which is submitted after a date thirty days prior to the filing of an action); 2) Judge Alaimo's findings (that plaintiff had been paid all sums due her under the insurance policy and had fully and completely recovered from any injuries she might have received in the September 1982 automobile accident) were unnecessary and irrelevant to the disposition of the matters before him, and therefore have no preclusive effect with respect to a subsequent claim for benefits arising after the filing of the Brunswick action (in this connection, plaintiff also points out as significant the fact that Judge Alaimo's ruling is on appeal to the Eleventh Circuit Court of Appeals), and; 3) the Georgia class action statute, O.C.G.A. § 9–11–23, is different from and less stringent than *Fed. R.Civ.P.* 23 and, because the instant action was initiated in state court, plaintiff was not barred from including class action allegations in her complaint by Judge Alaimo's earlier denial of class certification in the Brunswick Division federal action.

Since the date of the status conference in March, 1987, the parties have exchanged several rounds of briefs and responses, and have been afforded an adequate opportunity to present their respective arguments in detail. It should be noted that plaintiff, somewhat reluctantly, has moved to amend her complaint to delete the class action allegations included therein; plaintiff's brief in support of her motion to amend

indicates that the decision to abandon the class action allegations was prompted by signals transmitted by the Court with respect to the possible imposition of sanctions. This Order moots plaintiff's motion. All remaining matters currently before the Court are ripe for resolution.

## II. ANALYSIS

### A. *Summary Judgment*

Setting to one side for the time being the matter of sanctions, the Court must first address defendant's motion for summary judgment. The dispositive question is this: What is the preclusive effect of Judge Alaimo's findings—that defendant has paid plaintiff all sums due her under the subject insurance policy, and that plaintiff suffered no permanently disabling injury as a result of (and has fully and permanently recovered from) her September 1982 automobile accident?

Defendant, as noted, contends that the matter is simply resolved by reference to *res judicata* (claim preclusion) principles.[1] Plaintiff, on the other hand, maintaining that the cause of action here is different from that pursued in the Brunswick Division, refers to the rules governing collateral estoppel (issue preclusion), for the proposition that Judge Alaimo's ruling was unnecessary and irrelevant and therefore should be accorded no preclusive effect.[2]

Defendant stridently maintains that plaintiff's affirmative response to defense counsel's question as to whether plaintiff was claiming disability up to and including the date of trial in the Brunswick Division case conclusively establishes that the claim brought before Judge Alaimo is the same as that sought to be litigated in the instant

1. In order for *res judicata* to bar a second action, "four elements must be present: (1) a final judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits, and (4) the same cause of action must be involved in both cases." *Hart v. Yamaha-Parts Distributors, Inc.,* 787 F.2d 1468, 1470 (11th Cir.1986). *See also Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.,* 575 F.2d 530, 535–37 (5th Cir.1978).

2. "Collateral estoppel is properly invoked 'if the issue in the subsequent proceeding is identical to the one involved in the prior action, the issue was actually litigated, and the determination of the issue was necessary in the prior action.'" *Cotton States Mutual Insurance Co. v. Anderson,* 749 F.2d 663, 666 (11th Cir.1984), quoting *Williams v. Bennett,* 689 F.2d 1370, 1381 (11th Cir.1982).

action. The Court cannot agree. As plaintiff has pointed out, defendant persistently sought to limit the scope of the litigation between the parties to resolution of claims the proof of loss as to which was submitted at least thirty days prior to the filing of the action. *See Falagian, supra,* 167 Ga.App. at 802, 307 S.E.2d 698. Plaintiff accordingly sought to litigate within the parameters imposed on her by defendant, as is indicated by plaintiff's proposed findings of fact and conclusions of law submitted in the Brunswick Division case, wherein plaintiff sought only those benefits arising out of disabilities suffered up to a date thirty days prior to the filing of that lawsuit. Plaintiff has also pointed out that a separate cause of action can, and must, be stated for the recovery of disability benefits "coming due subsequently to any that could have been sued for" in the initial action. *Hartford Accident & Indemnity Co. v. Grant,* 116 Ga.App. 661, 158 S.E.2d 703 (1967); *Falagian, supra.* Had plaintiff prevailed in the Brunswick Division action in the manner that she anticipated, repetitive lawsuits on different "causes of action" would have been allowed. Thus, without assessing the merits of the case *sub judice,* the Court finds, first, that defense counsel's elicitation of an arguably inconsistent statement from plaintiff cannot support a finding that the *claim* litigated in the Brunswick action was plaintiff's disability through the date of trial and, second, that, the claim brought by plaintiff in this case being at least theoretically different from that litigated in the prior action, collateral estoppel principles must guide the Court in resolving the matters at hand. Whether this determination as to the relevant rules makes any different whatsoever with respect to the outcome of the case at bar, however, is a separate matter.

Collateral estoppel applies where the issue litigated in a subsequent proceeding is identical to that involved in the prior action, the issue was actually litigated, and the determination of the issue was "necessary" in the prior action. *Cotton States Mutual Insurance Co. v. Anderson, supra,* note 2, 749 F.2d 663. Analyzing the facts of the instant case in light of these principles, it becomes apparent that plaintiff's arguments against the preclusive effect of the prior judgment are without merit.

Contrary to the plaintiff's assertions, the dispositive "issue" has nothing to do with whether plaintiff was disabled from date A until date B or from date A through date C; such questions relate to plaintiff's ultimate *claims.* Rather, the crucial issue is *whether plaintiff suffered a disabling injury,* as a result of the September 1983 automobile accident, that would bind defendant to pay her benefits. A finding that a plaintiff in a case such as this sustained no injuries whatsoever in an accident as to which a defendant carrier provided coverage clearly would preclude relitigation of the question of disability. In other words, while it may be that repetitive actions are allowed or required under O.C.G.A. § 33–34–6 where benefits come due after initiation of a prior lawsuit, no benefits *can* come due after the filing of the first lawsuit, and no subsequent suit is permitted, if it is determined in the prior action that the plaintiff simply was not injured as a result of the covered accident; collateral estoppel would apply with full force.[3]

Looking again to the prerequisites for application of collateral estoppel, it is clear, first, that the basic issue, already addressed in the Brunswick Division, as to whether plaintiff was injured in the accident in question such that she would be entitled to *any* disability benefits is necessarily "identical" to the issue of disability

---

**3.** Plaintiff cites two cases, *Driggers v. Business Men's Assurance Co. of America,* 219 F.2d 292 (5th Cir.1955), and *Whitley Construction Co. v. Whitley,* 134 Ga.App. 245, 213 S.E.2d 909, and refers also to the *Grant* case, *supra,* 116 Ga.App. 661, 158 S.E.2d 703, for the proposition that this action is permitted by Georgia law. The Court notes, once again, that while these cases may allow for repetitive suits on "separable" contracts or on separable disability claims, none of these cases supports an argument that a party found not to be disabled by one court may file suit over and over and over again until the party finds a more sympathetic trier of fact.

that would have to be litigated in the instant case; a finding of a disabling injury is obviously a prerequisite to recovery of disability benefits. Second, the issue was most definitely "litigated" in the prior action, as the record indicates that a substantial quantity of medical evidence was introduced in the prior action bearing directly on this issue (almost all of which reflected that plaintiff had a medical history of back problems not related to the automobile accident in question, and that she was not "disabled" in any event). Thus, the first two of the three collateral estoppel "prongs" are satisfied.

The remaining question is whether the Brunswick Division Court's findings on this issue were "necessary." Clearly, in order for the Brunswick Division Court to find that defendant was under no obligation to pay disability benefits to the plaintiff for the period under consideration in that case (March 23, 1983 through thirty days prior to the filing of the Brunswick Division action), it was necessary for the Court to find, as it did, that plaintiff was not disabled during that period. Plaintiff argues, however, that it was unnecessary for the Court to rule, as it also did, that plaintiff was not disabled by the accident at any time after the period sued for and that plaintiff had fully and permanently recovered from any injuries she might have suffered.

In determining whether the Brunswick Court's findings were "necessary," the "appropriate question ... is whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment." Restatement (Second) of Judgments § 27, comment j & Illustrations 17 & 18. *See generally In re Westgate-California Corp.*, 642 F.2d 1174, 1177 (9th Cir.1981); *Bethesda Ford, Inc. v. Ford Motor Co.*, 572 F.Supp. 623, 632 (D.Md. 1983).[4] Clearly, it was important to plaintiff to prove that she was suffering a disability, and that the disability was related to the automobile accident. It was equally important to the defendant to prove that

plaintiff was not suffering from a disability, or that any disability was unrelated to the accident in question. The trier of fact viewed its finding, that plaintiff simply was suffering from *no* disability that would preclude her from working and no disability resulting from the car accident that would mandate the payment of any additional disability benefits, as necessary for resolution of the matter.

The Brunswick Division Court totally discredited plaintiff's testimony, found adversely to plaintiff, and laid the "issue" of disability arising out of the accident to rest once and for all. The issue was "necessarily" resolved, *see generally Parks v. Poindexter*, 723 F.2d 840, 842–43 (11th Cir. 1984), and collateral estoppel precluded its relitigation. Therefore, summary judgment in favor of the defendant in the case at bar is appropriate.

Lest it be thought that the excessive length of the foregoing discussion is reflective of the complexity of the issues involved, the Court notes that the above represents merely a step by step analysis of what is for all intents and purposes a matter of common sense. The Brunswick Division Court ruled that plaintiff was not disabled as a result of the accident with respect to which coverage was afforded. That ruling settled the matter, and subsequent actions were precluded; legal analysis merely bears out what the average first-year law student would expect.

Plaintiff places great emphasis on the fact that the Brunswick Division case is now on appeal. Apparently, plaintiff believes that this fact has some bearing on the preclusive effect of the prior judgment. Plaintiff has argued that, at the very least, the pendency of the appeal militates in favor of withholding judgment. However, "[t]he established rule in the federal courts is that a final judgment retains all of its *res judicata* [or collateral estoppel] consequences pending decision of the appeal...." 18 Wright, Miller & Cooper,

---

4. "One of the most important considerations is whether, at the time of the earlier action, the parties could foresee that facts subject to estop-pel could be important in future litigation." *Johnson v. United States*, 576 F.2d 606, 615 (5th Cir.1978).

*Federal Practice and Procedure* § 4433, p. 308; *see Hunt v. Liberty Lobby, Inc.,* 707 F.2d 1493 (D.C.Cir.1983); *Fidelity Standard Life Insurance Co. v. First Nat'l Bank & Trust Co.,* 510 F.2d 272, 273 (5th Cir.1975).

▪ Plaintiff has indicated that the ground for appeal of the prior action is her contention that she was denied the right to trial by jury. It is true that if the prior action is reversed, and if a new trial before a jury results in a judgment favorable to the plaintiff, the prior action will no longer have preclusive effect with respect to the issue here sought to be litigated. But until the described hypothetical events occur the prior judgment is binding. It is also true that under certain circumstances, a court may exercise its discretion to withhold judgment. However, there are no considerations present in the instant case that would incline the Court to do so. *Cf. Prager v. El Paso National Bank,* 417 F.2d 1111, 1112 (5th Cir.1969) (where statute of limitations might pose bar to relitigation of subsequent action, district court directed to hold case pending outcome of appeal in prior action).

Accordingly, defendant's motion for summary judgment is GRANTED. This ruling is without prejudice to plaintiff's right to bring another action based on the claim advanced in the case *sub judice* should the prior action be retried and resolved in plaintiff's favor.

## B. *Sanctions*

Prior to delving into the matter of sanctions, it is appropriate briefly to review the elements of defendant's argument in favor of invoking *Fed.R.Civ.P.* 11. Defendant claims first that the instant action was barred *ab initio* on the ground of *res judicata,* and that therefore sanctions are appropriate with respect to plaintiff's decision to file suit in the first instance. Defendant claims, alternatively, that at the very least the failure of plaintiff's counsel to dismiss the action after the entrance of Judge Alaimo's findings in the Brunswick Division case warrants imposition of sanctions. Finally, defendant claims that sanctions should be imposed because of plaintiff's inclusion of class action allegations in her complaint. In this regard, plaintiff argues that relitigation of the class issue was barred by Judge Alaimo's finding that the prerequisites of *Fed.R.Civ.P.* 23(a) had not been met.

### 1. *Initiation of the Lawsuit*

▪ The Court's discussion, *supra,* concerning the state of the law surrounding actions brought under O.C.G.A. § 33–34–6 renders unnecessary a lengthy discussion of the reasons why the initiation of this lawsuit does not *ipso facto* call for imposition of sanctions. Suffice it to say that the Court does believe that plaintiff sought to recover benefits in the Brunswick Division action only for a period up to and including thirty days prior to the initiation of that lawsuit, and that the Brunswick Division Court's rulings would not necessarily have precluded all subsequent litigation. Had plaintiff prevailed in that proceeding, she would have been within her rights in bringing the instant action.

On the other hand, plaintiff's counsel should have thought twice before "jumping the gun," as he did, by filing suit prior to finalization of judgment by Judge Alaimo; prudence would have dictated caution. However, taking into consideration that "[a] complaint initially filed in ... state court and removed by the defendant to ... federal court should not be subjected to scrutiny under Rule 11 because it was not governed by the Rule when filed and signed," *Kendrick v. Zanides,* 609 F.Supp. 1162, 1170 (N.D.Cal.1985), the Court reluctantly concludes that plaintiff's decision to proceed prior to entrance of Judge Alaimo's final judgment, while unwise, does not warrant Rule 11 sanctions.

### 2. *Failure to Dismiss*

▪ Plaintiff's counsel was under an obligation to abandon this suit after final judgment was rendered by the Brunswick Division Court. Even if it assumed, *arguendo,* that plaintiff's claim was "well grounded in law and fact" prior to Judge Alaimo's ruling, the action was both factu-

ally and legally untenable after the date of that final judgment.

In determining the appropriateness of imposing sanctions on plaintiff's counsel,[5] the Court does not look to the original complaint; as noted, the applicability of Rule 11 with respect to a complaint filed in state court is questionable. Rather, the Court assesses those pleadings filed by plaintiff's counsel in this Court after removal of the case from the Superior Court of Liberty County. These pleadings include plaintiff's brief in opposition to defendant's motion for summary judgment, filed on October 1, 1986.

█ The legal arguments advanced in support of plaintiff's claim have already been discussed in detail, and have been found to be without merit. Advancing arguments that are ultimately found to be lacking in merit does not, of course, necessarily warrant imposition of sanctions. The question to be addressed is whether plaintiff's counsel could have believed, after a reasonable inquiry, that the pleadings he filed were well grounded in both fact and law. The standard is an objective one. *Fed.R.Civ.P.* 11; *see generally Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253–54 (2d Cir.1985).

Plaintiff's counsel's pleadings fall far short of the mark. The Court finds that: 1) reasonable inquiry—and common sense—would have revealed that, after judgment was rendered by the Brunswick Division Court, there remained no legal basis on which this action could proceed, *see supra* § II.A. of this Order; and 2) reasonable inquiry would have revealed that the pendency of an appeal does nothing to lessen the preclusive effect of a prior federal judgment. *See, id.*

Counsel believes, obviously, that Judge Alaimo's findings are wrong. A party who has not prevailed in an action, however, always has the option to appeal the adverse ruling. In this case, that option has been exercised. And, unless and until the Brunswick Division Court's judgment is reversed, there can be no collateral attack in this Court ,on Judge Alaimo's ultimate finding of fact that plaintiff suffered no injury that would preclude her from working at any time after March 23, 1983.[6]

"Sanctions are especially appropriate in situations where the doctrines of *res judicata* and collateral estoppel plainly preclude relitigation of the suit." *McLaughlin v. Bradlee*, 602 F.Supp. 1412, 1417 (D.D.C.1985); *see also Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1131 (5th Cir.1987). The federal courts can ill afford the time required to dispose of such frivolous suits, and parties naturally have a right to be free from vexatious litigation over matters that have been conclusively settled in prior litigation. *See Thiel v. First Federal Savings & Loan Ass'n*, 646 F.Supp. 592, 597 (N.D.Ind.1986); *Columbus v. United Pacific Insurance Co.*, 641 F.Supp. 707 (S.D.Miss.1986). In this connection, the appropriateness of sanctions in the case at bar is not diminished by the fact that there may have been some basis in law and fact for initiation of the suit. "Counsel have a continuing obligation to reevaluate their position as the case develops." *Robinson, supra*, 808 F.2d at 1127.

Upon discovering that a good faith basis no longer exists, it is incumbent upon the appropriate counsel and party to take necessary steps to ensure that the proceedings do not continue without a reasonable basis in law and fact.... The actions that need to be taken when [it

---

5. The Court will not, in this instance, impose sanctions against plaintiff herself. *Cf. Cannon v. Loyola University of Chicago*, 784 F.2d 777, 782 (7th Cir.1986). The Court's decision in this regard should not be read as a condonation of plaintiff's conduct; however, it is plaintiff's counsel who signed the pleadings in this case, and it is plaintiff's counsel who was in the position and under the obligation to advise his client that Judge Alaimo's ruling precluded further litigation.

6. As the Seventh Circuit has stated:

It is human nature to crave vindication of a passionately held position even if the position lacks an objectively reasonable basis in the law. But the amended Rule 11 makes clear that he who seeks vindication in such circumstances and fails to get it must pay his opponent's reasonable attorney's fees.

*Dreis & Krump Mfg. v. International Ass'n of Machinists*, 802 F.2d 247 (7th Cir.1986).

appears that an action is no longer well grounded in law or fact] necessarily depend on the circumstances of each case. *Id.*, & n. 17. In the instant case, plaintiff would have been well-advised to move for voluntary dismissal of the action, pursuant to *Fed.R.Civ.P.* 41, pending appeal of the Brunswick Division judgment.

Counsel's decision to persist with this action, and the entirely baseless arguments he has advanced in several pleadings submitted in opposition to motions filed by the defendant, have convinced the Court that counsel has not satisfied the objective good faith standards of Rule 11. Even if the Court were to give counsel the benefit of the doubt, and were to assume that counsel simply failed to understand the very basic legal point of preclusion that bars this action, it must be borne in mind that "[a]n empty head but a pure heart is no defense." *Thornton v. Wahl*, 787 F.2d 1151 (7th Cir.1986). However, the Court does not question counsel's intelligence, and therefore does not give him the benefit of the doubt.

The Court deems the appropriate sanction under *Fed.R.Civ.P.* 11 to be payment of all reasonable attorney's fees incurred by the defendant after the filing, on October 1, 1986, of plaintiff's brief in opposition to defendant's motion for summary judgment. Defense counsel's affidavit indicates that 40.2 hours were spent by him in defending this case after the mentioned date. In addition, $447.72 in costs are properly attributable to defense of the action during the period under consideration.[7] Taking into account defense counsel's credentials and experience, and looking to prevailing fees charged by attorneys practicing in this jurisdiction, the Court finds $85.00 to be a reasonable hourly fee. Accordingly, plaintiff's counsel shall be or-

dered to pay to the defendant the sum of $3,854.72, representing all attorney's fees and costs incurred by defendant in connection with this litigation after October 1, 1986.

### 3. *Class Action Allegations*

As indicated, *supra,* the Court's ruling with respect to defendant's second argument renders moot the question whether sanctions should be imposed on plaintiff's counsel for his inclusion of class action allegations in plaintiff's complaint in this case. The Court takes this opportunity, however, to note that, in all likelihood, plaintiff was collaterally estopped from claiming the existence of a class by Judge Alaimo's determination that the prerequisites for class certification under Fed.R. Civ.P. 23(a) had not been met.

Plaintiff's counsel stresses that the instant suit was filed in state court, and that the requirements of the Georgia class action statute, O.C.G.A. § 9–11–23, are less stringent than are those of *Fed.R.Civ.P.* 23. Thus, counsel reasons, the class action "issue" decided by Judge Alaimo was different from that advanced in plaintiff's complaint in this action.[8]

The Court does not believe that the apparent difference in phraseology between *Fed.R.Civ.P.* 23 and O.C.G.A. § 9–11–23 is reflective of any significant divergence in substance or purpose between the two statutes. *See Sta-Power Industries v. Avant*, 134 Ga.App. 952, 216 S.E.2d 897 (1975) ("[W]e look to federal cases to aid us" in determining whether a class action may proceed (under statutory predecessor of O.C.G.A. § 9–11–23)). Moreover, plaintiff's contentions that there are "no prerequisites" to the establishment of a class under Georgia law, and that the provisions of

---

7. This figure represents $557.72 in total disbursements, less $110 paid for removal bond and federal filing fee. It is not possible to determine from defense counsel's affidavit the dollar amount of costs incurred prior to October 1, 1986, and that incurred on or after the mentioned date. Nevertheless, because defense counsel has expended time, which is not reflected in his affidavit dated March 25, 1987 and for which no attorney's fees shall be awarded, in defending this action and in responding to

several pleadings filed by the plaintiff during the past month, the Court deems the expedient of awarding all costs to the defendant as appropriate.

8. That the "claim" sued on by plaintiff in this suit is different from that litigated in the Brunswick Division is plainly irrelevant. Restatement (Second) Judgments § 27.

Georgia statute are more flexible than those of the federal rule, are open to serious question. *See Ford Motor Credit Co. v. London*, 175 Ga.App. 33, 37–38, 332 S.E.2d 345 (1985).

In any event, federal law governs the collateral estoppel effect of a prior federal court judgment. *Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1503 (11th Cir.1984). *Silcox v. United Trucking Service, Inc.*, 687 F.2d 848, 852 (6th Cir.1982); *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334 (5th Cir.1982); *Johnson v. United States*, 576 F.2d 606, 613 (5th Cir.1978); 17 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4226 p. 344 (1978).[9] As to the state of federal law in this area, notwithstanding that class certification is in a sense procedural in nature, "[t]he denial of class certification stands as an adjudication of one of the issues litigated." *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 336, 100 S.Ct. 1166, 1173, 63 L.Ed.2d 427 (1980). This statement of the Supreme Court, read with reference to the public policy against subjecting parties to repetitive litigation over an issue that has once been resolved by a court of competent jurisdiction, would seem to settle the matter. This Court believes that a party cannot avoid the preclusive effect of a denial of class certification rendered by a federal court in this jurisdiction by filing suit against the same party in Georgia state court and pointing to largely illusory differences between statutes that are designed for essentially identical purposes.

While the precise question here under consideration has not often been before the courts (quite possibly because this sort of "end-run" is not often attempted), it appears that, where litigation is between the same parties, state courts will give collateral estoppel effect to federal court denials of class certification, and that federal courts will do the same with respect to denials of certification rendered by state courts; semantic differences between state and federal statutes have not been con-

sidered. *See generally Fins v. Utilities & Industries Corp.*, Fed.Sec.L.Rep. (CCH) P91,533 (S.D.N.Y.1984) [Available on WESTLAW, DCT database]; *Bartlett v. Miller and Schroeder Municipals, Inc.*, 355 N.W.2d 435 (Minn.App.1984).

In light of the foregoing, it appears clear that, regardless of whether a favorable judgment in the prior Brunswick Division suit would have allowed plaintiff to proceed with an action in her own behalf, she was barred from alleging the existence of a class. Even if the case had remained in state court, it is most likely that plaintiff's class action allegations would have been subject to dismissal on collateral estoppel grounds. The only effect, therefore, of the removal of the case to federal court, and of counsel's subsequent federal-court briefs in favor of the class action allegations, is to subject counsel's conduct to Rule 11 scrutiny. At any rate, because sanctions have been awarded in full in connection with plaintiff's failure to abandon the lawsuit *in toto*, the Court need not consider further the appropriateness of sanctions in connection with the class action issue.

## III.  CONCLUSION

For the reasons stated, defendant's motion for summary judgment is GRANTED. Defendant's request for imposition of sanctions pursuant to *Fed.R.Civ.P.* 11, in addition, is GRANTED. Accordingly, plaintiff's counsel is hereby ORDERED to tender to the defendant the sum of $3,854.72. This dollar figure represents an appropriate sanction for the filing of patently frivolous pleadings.

It is hoped that this Order shall serve as a warning to plaintiff's counsel, and to all attorneys who practice in the United States District Court for the Southern District of Georgia. In order both to combat frivolous and vexatious litigation and to protect the integrity of the judicial system, this Court will not hesitate in the future to impose appropriate sanctions on errant attorneys pursuant to Rule 11 of the Federal Rules of Civil Procedure.

---

**9.** There are certain limitations on this rule, *see generally Answering Service, Inc. v. Egan*, 728

F.2d 1500, 1505–06 (D.C.Cir.1984), none of which need be considered here.

The Clerk will enter judgment against W. Douglas Adams as attorney for the plaintiff, Jannette S. Lee, in the amount of $3,854.72.