Sherrial T. ST. AMANT, Plaintiff,

v.

John R. BERNARD, et al.,
Defendants–Appellees,
Cross–Appellants,

v.

Larry P. BOUDREAUX, Individually,
Appellant–Cross–Appellee.

No. 87–3802.

United States Court of Appeals,
Fifth Circuit.

Nov. 8, 1988.

---

**10.** 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**11.** *Fontenot v. Upjohn Co.*, 780 F.2d 1190 (5th Cir.1986).

Larry P. Boudreaux, Thibodaux, La., pro se.

Roy A. Jefferson, Jr., Thibodaux, La., for appellant-cross-appellee.

Gerald J. Nielsen, Delbert G. Talley, Marsha B. Higbee, Harvey, La., for defendants-appellees, cross-appellants.

Before WISDOM, REAVLEY, and POLITZ, Circuit Judges.

WISDOM, Circuit Judge:

This case calls upon the Court to decide once again the appropriateness of sanctions under Fed.R.Civ.P. 11. Larry Boudreaux represented Sherrial St. Amant in his suit against John R. Bernard and Bertrand Hebert, the police chief and the mayor of Thibodaux, Louisiana, respectively. This was the second federal lawsuit and fourth proceeding arising from St. Amant's termination as a police officer for the City of Thibodaux. After the magistrate granted summary judgment for the defendants, he ordered that Boudreaux and St. Amant pay the defendants' attorney and para-legal fees for the entire litigation. Boudreaux appeals only for himself. The defendants cross-appeal the magistrate's denial of costs. We affirm the magistrate's decision in both appeals.

## I.

St. Amant was shot in the shoulder in the line of duty in February 1980. He continued to work, but as a result of his injuries he was assigned duties inside the police station. In January 1982, St. Amant filed a workers compensation action, in which he averred that he had suffered "a permanent, total disability that prevents him from engaging in any gainful occupation for wages". He stopped working on May 5, 1982. St. Amant was awarded $40,000 in back pay on October 21, 1983. Boudreaux represented St. Amant in that action.

On September 2, 1982, the Thibodaux Police Department terminated St. Amant's employment. St. Amant sued Ronald Benoit and John Robicheaux, Thibodaux's police chief and mayor at the time of his termination, on May 5, 1983.[1] He alleged that his termination violated the Rehabilita-

1. *St. Amant v. Benoit,* No. 83–2279 (E.D.La. Aug. 27, 1984) (unpublished), *rev'd in part and remanded,* (5th Cir. 1985) , 765 F.2d 141 (Table), *dismissed on remand,* No. 83–2279 (E.D.La. Jan. 27, 1986) (unpublished), *aff'd,* 806 F.2d 1294 (5th Cir.1987).

tion Act.[2]  He also contended that he had been discharged for political reasons, in violation of 42 U.S.C. § 1983.  The court dismissed the Rehabilitation Act claim because St. Amant could not establish that Thibodaux received federal financial assistance.  The court held that the Section 1983 claim was barred by the statute of limitations.  Boudreaux represented St. Amant in these proceedings.

On December 15, 1982, before he filed the complaint in *St. Amant v. Benoit,* the new police chief and mayor of Thibodaux, John Bernard and Bertrand Hebert, voluntarily rehired St. Amant.  Two months later, St. Amant informed the Police Department that he was scheduled for surgery within ten days.  This surgery was to relieve pain from his job-related injury.  He was granted leave at full pay.  He underwent surgery on May 5, 1983.  He did not return to work, although he continued to receive full pay.  In December 1982, Police Chief John Bernard asked if St. Amant intended to return to work.  Bernard requested a doctor's report.  Upon learning from this report that St. Amant had been able to work for several months, Bernard terminated St. Amant's employment.  St. Amant requested a review from the Louisiana State Civil Service Board.  On May 2, 1984, the Board held that St. Amant's termination was in good faith and for cause.  One week later it affirmed that conclusion.

The Louisiana State Court of Appeal affirmed the Board's decision.[3]  Boudreaux represented St. Amant throughout these proceedings.

On December 24, 1984, St. Amant filed the instant lawsuit against Bernard and Hebert.  He alleged violations of the Rehabilitation Act and of Section 1983 identical with those made in his earlier suit against Benoit and Robicheaux.  On October 8, 1985, the magistrate dismissed the case for failure to state a claim.[4]  This Court reversed, holding that St. Amant should be allowed to proceed with discovery.[5]  On remand, the magistrate granted summary judgment for the defendants on July 21, 1987.  He ordered St. Amant and Boudreaux to pay the defendants' attorney and paralegal fees on September 2, 1987.  Boudreaux did not file a memorandum opposing sanctions until his brief before this court.  Boudreaux appeals only for himself.

## II.

### A.  *Boudreaux's Conduct Merits Sanctions.*

█ Rule 11 provides for sanctions against attorneys and parties who abuse the litigation process by filing a groundless "pleading, motion or other paper" in federal court.[6]  *Thomas v. Capital Security*

---

2.  29 U.S.C. § 706 *et seq.* (1982).

3.  *St. Amant v. Municipal Gov't Employees Civil Serv. Bd.*, 507 So.2d 21  (La.Ct.App. 1st. Cir., 1987).

4.  *St. Amant v. Bernard,* No. 84–6078 (E.D.La. Oct. 8, 1985) (Meyer, Magistrate).

5.  *St. Amant v. Bernard,* 788 F.2d 1563  (5th Cir.1986) (per curiam) .

6.  Rule 11 provides in relevant part:
    The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or

needless increase in the cost of litigation....
    If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
    The 1983 Amendments to Rule 11 encourage courts to respond to "the need to impose sanctions for pleading and motion abuses".  Fed.R. Civ.P. 11 advisory committee's note.  Sanctions are now mandatory for violations of Rule 11, although courts retain discretion to tailor penalties to particular offenses.  The amendments also emphasize that both parties and courts can move to impose sanctions.  The increased availability of sanctions has made litigation over sanctions common in federal courts.  *See, e.g., Eastway Constr. Corp. v. City of New York,* 821

*Services, Inc.,* an *en banc* decision of this Court, declares that Rule 11 places three duties on counsel: (1) counsel must make a reasonable inquiry into the factual basis of any pleading, motion, or other paper; (2) counsel must make a reasonable inquiry into the law; and (3) counsel must not sign a pleading, motion, or other paper intended to delay proceedings, harass another party, or increase the costs of litigation.[7] "[A] construction of Rule 11 which evaluates an attorney's conduct at the time a 'pleading, motion, or other paper is signed is consistent with the intent of the rulemakers and the plain meaning of the language contained in the rule." [8] We reverse if we find an abuse of discretion in awarding sanctions.[9]

The magistrate justified sanctions on two grounds: (1) that Boudreaux's signature of the complaint in *St. Amant v. Bernard* in December 1984 was unreasonable at that time; and (2) that Boudreaux failed to comply with his continuing duty to take steps to drop his claims that lost viability after they were filed, however strong they might have been at the time he signed the papers. The continuing duty to re-evaluate claims was announced by the initial *Thomas* panel and was the law of this Circuit at the time the magistrate wrote his opinion.[10] That portion of the *Thomas* panel's opinion was repudiated by the Court sitting *en banc* and is no longer the law of this Circuit.[11] We must therefore determine whether the award of sanctions is justified at the time Boudreaux signed the *Bernard* complaint in December 1984. Our review must be especially searching in the light of our policy that fees be granted only for the costs of responding to specific pleadings. Here, the magistrate awarded fees for all the costs the defendants incurred while defending the litigation.[12] Because we find that the award of sanctions is justified under Rule 11, we need not discuss the standards of Sections 1927 and 1988.

### 1. The Rehabilitation Act Claim.

■ A reasonable inquiry into the law and facts of St. Amant's Rehabilitation Act claim would have told Boudreaux that it was inadequate when signed. St. Amant's Rehabilitation Act claim in *Benoit* had been dismissed for failure to prove federal financial assistance. St. Amant did not appeal that dismissal.[13] Boudreaux nevertheless signed the complaint in *Bernard* four months later, without having made any effort to establish that the Thibodaux Police Department received federal financial assistance. Indeed, at that time Boudreaux did not believe that evidence proving it was available. In August 1984, when the *Benoit* Rehabilitation Act claim was dismissed, he assured the district court that discovery was complete. At the time of filing, then, Boudreaux both knew that St. Amant's Rehabilitation Act claim was factually inadequate and had gone on record as believing that no evidence would be found in discovery to remedy that inadequacy.

This in itself supports the magistrate's finding that Boudreaux did not fulfill his

---

F.2d 121, 124 (2d Cir.) (Pratt, J., dissenting) (describing the "new 'Era of Sanctions'"), *cert. denied,* — U.S. —, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). *See also* Schwarzer, *Rule 11 Revisited,* 101 *Harv.L.Rev.* 1013 (1988).

**7.** *Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 874 (5th Cir.1988) (*en banc*).

**8.** *Id.* at 874.

**9.** *Id.* at 873.

**10.** *Thomas v. Capital Security Services, Inc.,* 812 F.2d 984 (5th Cir.1987), *vacated in relevant part,* 836 F.2d 866 (5th Cir.1988) (*en banc*).

**11.** 836 F.2d at 874.

**12.** *Id.* at 880–81. This policy follows from the advisory committee's instruction that parties filing for sanctions should notify the court and opposing party "promptly" after discovering a basis for sanctions. Fed.R.Civ.P. 11 advisory committee's note. It enhances Rule 11's educational power by letting judges pinpoint those motions and pleadings that are abusive. It may also increase the rule's deterrent effect by making the imposition of costs and fees for each infraction more certain. Further, limiting awards under Rule 11 to specific motions or pleadings reduces the likelihood that parties seeking sanctions will run up unreasonable costs to punish the sanctioned party.

**13.** *See Benoit,* 765 F.2d 141 (5th Cir.1985) (per curiam) (unpublished).

responsibilities. In addition, *Thomas* sets forth several factors indicating whether counsel has conducted a responsible inquiry into the facts.[14] All support the magistrate's award of sanctions. As we have noted, Boudreaux had ample time to investigate St. Amant's Rehabilitation Act claim. He did not have to rely upon his client for information.[15] Nor was Boudreaux's situation analogous to that of other attorneys whose failure to conduct independent investigations was not sanctioned. For instance, the information he sought was not esoteric or largely in the control of the opposing party, as was true when a plaintiff's attorney could not determine whether the defendant corporation received federal financial assistance in some of its secret contracts with the government.[16]

Boudreaux suggests that cross-examination of the city's Finance Director would have established that the City of Thibodaux received federal financial assistance. He bases this assertion on the Director's deposition, in which the Director said that the Police Department received no "direct federal funding". Boudreaux argues that this implies that the City received indirect financial assistance. The finance director's denial of direct aid did not provide a sufficient basis for a lawsuit that has as a prerequisite the Department's receipt of federal financial assistance. In any event, it was not available to Boudreaux until the director's deposition was taken in 1987, long after Boudreaux had signed the complaint. Even then, the defendant's deposed the Director; Boudreaux made no effort to do so.

Finally, Boudreaux should have investigated the law defining "federal financial assistance". Under the Rehabilitation Act, money is not always financial assistance, and aid other than money may be "financial assistance" under the Act.[17] Hence, an admission from the Finance Director that the City received indirect assistance from the federal government may not have been sufficient to establish that that assistance met the requirements of the Rehabilitation Act.[18] There is no indication that Boudreaux researched this question.

### 2. The Section 1983 Claim.

■ Boudreaux's conduct is less questionable with regard to St. Amant's Section 1983 claim. As in *St. Amant v. Benoit*, St. Amant contended that he was dismissed for political reasons. Boudreaux could develop evidence establishing Bernard and Hebert's motives in discovery. We therefore cannot say that Boudreaux's signature violated his responsibilities to inquire into the law and facts. Boudreaux, however, undertook no discovery to determine Bernard and Hebert's motivations. The defendants, by contrast, conducted a great deal of discovery. Much of that involved deposing witnesses Boudreaux had subpoenaed.

**14.** *Thomas,* 836 F.2d at 875.

**15.** An attorney may escape sanctions under rule 11 if he had to rely on a client for information about the facts underlying the pleadings. *See* Fed.R.Civ.P. Rule 11 advisory committee's note; 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 11.02 [3] n. 26 (2d ed. 1987).

**16.** *Kamen v. American Telephone & Telegraph,* 791 F.2d 1006, 1012 (2d Cir.1986).

**17.** *See Kamen,* 791 F.2d at 1013 (describing difficulties of defining "federal financial assistance" within meaning of Rehabilitation Act).

**18.** This court's reversal of the magistrate's dismissal of the Rehabilitation Act claim against *Bernard,* 788 F.2d 1563 does not establish that St. Amant's claims had merit at that time. The court held that St. Amant's pleadings accomplished their purpose because they notified the defendants of what he intended to prove. The opinion does not discuss the basis for the magistrate's conclusion that St. Amant and Boudreaux already knew that they could not prove the complaint. Indeed, the court "express[ed] no opinion as to the merits of St. Amant's claims". Finally, the court's earlier opinion in no way contravenes the magistrate's finding that St. Amant and Boudreaux brought suit to harass the defendants. Subsequent developments in this litigation teach that dismissal may be an appropriate remedy for repetitive claims. *See, e.g., McLaughlin v. Bradlee,* 803 F.2d 1197 (D.C.Cir. 1986) (affirming dismissal of repetitive complaint).

Boudreaux notes that the defendants offered a $10,000 settlement in January 1987. St. Amant rejected the settlement. This offer simply represents the defendants' judgment that settlement would be less expensive than litigating the lawsuit. It does not establish that the claims had merit.

Most of those witnesses asserted when deposed that they had no intention of testifying favorably to St. Amant. During discovery, St. Amant was, the magistrate found, "consistently recalcitrant and evasive, thereby necessitating frequent court orders". On April 23, 1987, Amant admitted that the Section 1983 claim was based upon "speculation". On the same day, he also denied that there was any "political pressure" behind his dismissal. He was dismissed, he said, because people did not like his effectiveness as an internal affairs officer. When pressed, he repeated again that political factors led to his dismissal. The magistrate inferred from St. Amant's disavowals, as well as Boudreaux's lack of preparation, that the Section 1983 action was meant to harass the City. He made the same finding with regard to St. Amant's Rehabilitation Act claim. His conclusion is supported by the fact that this is the fourth proceeding, and second lawsuit brought in federal court, arising out of the same subject matter. Repeat litigation of identical claims over identical subject matter may support an inference that the litigation was meant to harass opposing parties.[19]

■ Boudreaux also argues that his motions to withdraw as St. Amant's counsel insulate him from liability. He first moved to withdraw in March 1987. Obviously, his March 1987 motion to withdraw cannot protect him from fees based on his signature of the December 1984 complaint. Still less effective is his September 1987 motion to withdraw, filed after fees were awarded to the defendants. Although he became aware in 1987 that St. Amant's claims had little value, he says, he could neither withdraw nor convince St. Amant to accept the settlement offered by the City.

The dilemma confronting Boudreaux is one in appearance only. Boudreaux's duties under Rule 11 were largely exhausted when he signed the papers. He was not suddenly subject to sanctions in March 1987, but had been liable since December 1984. The dilemma he paints could happen only if attorneys had a continuing duty to reevaluate claims and to urge dismissal of meritless claims. After the *en banc* opinion in *Thomas*, it is clear that attorneys have no such duty.[20]

In any event, we find that Boudreaux acted reasonably in litigating the main contentions of St. Amant's suit after March 1987. Boudreaux opposed the defendants' summary judgment motion but did not file a brief. He filed a notice of appeal from the magistrate's decision granting summary judgment but did not file a brief. The appeal was dismissed. It is settled in this Circuit that Boudreaux can escape Rule 11 sanctions by allowing motions for summary judgment or dismissal of meritless claims to go unopposed; he need not independently move to dismiss his own client's claims.[21]

### B. *Boudreaux's Failure To Raise Issues Below.*

An additional problem with Boudreaux's appeal is that he raised few if any of these issues below. Until March 1987, Boudreaux never suggested that he would end his representation of St. Amant, whom he had represented since January 1982. His threat to withdraw followed closely upon the first mention of sanctions. At a status conference on January 8, 1987, the magistrate mentioned that sanctions might be appropriate. In a letter to Boudreaux sent on January 20, 1987, the defendants' counsel told Boudreaux that they planned to seek costs and attorney fees. The letter included copies of cases articulating stan-

---

**19.** *See, e.g., McLaughlin,* 803 F.2d 1197 (sanctions awarded against plaintiff for bringing four suits arising from same facts); *Lee v. Criterion Ins. Co.,* 659 F.Supp. 813 (S.D.Ga.1987) (sanctions for filing several suits).

Successive lawsuits make it appropriate that the attorney share the sanction. Counsel bears responsibility for informing the client that further litigation would be pointless. *See* Note, *A*

*Uniform Approach to Rule 11 Sanctions,* 97 *Yale L.J.* 901, 917 (1988).

**20.** Confusion on this point may have arisen because the law in this Circuit has changed since sanctions were awarded against Boudreaux. *See supra* note 10 & 11 and accompanying text.

**21.** *See Jackson Marine Corp. v. Harvey Barge Repair, Inc.,* 794 F.2d 989, 992 (5th Cir.1986).

dards for sanctions under Rule 11, Section 1927, and Section 1988. Boudreaux responded to these two warnings only by moving to withdraw as St. Amant's counsel on March 25, 1987, about 28 months after he signed the complaint. On August 13, 1987, the defendants' filed a motion for fees and costs. Boudreaux did not file an opposition brief.

On September 2, 1987, the magistrate held a hearing on the defendants' motion for costs and fees. Boudreaux did not attend the hearing but sent an associate on his behalf. This attorney argued only that St. Amant's claims had merit and were not pressed in bad faith. He presented no new evidence supporting those allegations and did not discuss the standards for sanctions under Rule 11. The court granted The defendants' motion on September 2, 1987. The magistrate stayed the order for fifteen days to allow Boudreaux to file a memorandum in opposition to the award of fees and costs. Boudreaux did not dispute the award. He filed a second motion to withdraw on September 30, 1987. It was denied. On October 20, 1987—almost fifty days after the motion for fees and costs was awarded and ten full months after sanctions had been suggested—the magistrate made the order of fees and costs final. Despite all these opportunities, Boudreaux never responded until he appeared before this court.

We allow appellants to raise new issues before this court only when there is a risk that a "grave injustice" or "fundamental miscarriage of justice" will result.[22] We see little risk of injustice here. We also evaluate the blameworthiness of the par-ty's failure to raise the issue below. We allow litigants appearing *pro se* latitude to raise new issues.[23] When a failure to raise an issue may undermine the viability of proceedings in trial courts, however, the value of sanctions as a deterrent is high. Boudreaux is an attorney and should know when issues should be raised. He understood that his participation in the lawsuit made him vulnerable to sanctions. Each time sanctions became an issue he moved to withdraw. Not once, however, did he explain why he should not be sanctioned for having signed the complaint in December 1984. His failure to do so is unreasonable.[24]

## III.

The magistrate denied costs because the receipts were insufficiently itemized. The defendants cross-appeal, arguing that they could have itemized if they had known it was necessary. The magistrate's award of fees, however, is well within the bounds of a reasonable award for costs and fees combined. We cannot say that the defendants suffered any injustice from the magistrate's denial of fees. Our reluctance to remand is strengthened by our unwillingness to use any more judicial time than is necessary on Rule 11 questions.[25]

## IV.

We hold that Boudreaux violated his duty to conduct a reasonable investigation into the facts and law relevant to St. Amant's Rehabilitation Act claim. We find also that this claim and his Section 1983 claim were filed to harass Bernard and

**22.** *Alberti v. Klevenhagen,* 790 F.2d 1220, 1229 (5th Cir.1986).

**23.** *See* Fed.R.Civ.P. 11 advisory committee's note (recommending that courts consider "special circumstances" of pro se litigants).

**24.** Even before this court, Boudreaux mounted an ineffective defense against the sanctions. For instance, his opening brief did not discuss *Thomas,* an *en banc* opinion decided in 1988 that reversed one of the grounds on which he was found liable. We are tempted to award sanctions under Federal Rule of Appellate Procedure 38. We will instead warn counsel that similar lapses will be sanctioned. *See, e.g., McLaughlin,* 803 F.2d at 1201 (issuing similar warning).

**25.** Courts are to prevent Rule 11 from generating a new class of satellite litigation. *See, e.g.,* Note, *A Uniform Approach, supra* note 19, at 901 n. 7. In part, this prohibition is intended to conserve judicial resources. It also prevents cases from being retried on the merits, with the question in the new litigation being not, "Are you right?" but, "Are you sanctionable?". *See Szabo Food Service v. Canteen Corp.,* 823 F.2d 1073, 1086 (7th Cir.1987) (Cudahy, J., concurring in part and dissenting in part).

Hebert. Finally, because the size of the award is well within the range of reasonable discretion, there is no reason to adjust it to include itemized costs.[26]

The judgment of the magistrate is AFFIRMED.

---

**26.** We are concerned that the defendants incurred costs in excess of those necessary to defend this litigation. *See United Food & Commercial Workers v. Armour and Co.,* 106 F.R.D. 345, 350 (N.D.Cal.1985) (explaining that Rule 11 requires parties to mitigate damages); *Thomas,* 836 F.2d at 881 (endorsing *Armour*). St. Amant's Rehabilitation Act claim could have been refuted solely by a well-phrased affidavit from the City Finance Director. His Section 1983 claim might have defended with nearly the same economy of effort. In the light of this court's earlier decision encouraging the parties to begin discovery, however, we will not reduce the amount of damages. Nonetheless, in the future parties faced with frivolous claims should mitigate expenses. They may do so by asking for sanctions as soon as possible after the complaint is filed. *See supra* note 12 (noting that sanctions should be sought "promptly" after abusive papers are filed).