William O. OSBORN

v.

**BELL HELICOPTER TEXTRON, INC.**

**Civ. A. No. 4:91–CV–118–Y.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Aug. 5, 1993.

**448**

Hal Keith Gillespie and David Kohlman Watsky, Gillespie, Rozen & Tanner, Dallas, TX, for plaintiff.

Richard Matthew Kobodish, Jr., Fulbright & Jaworski and Allan G. King, Johnson & Gibbs, Dallas, TX, for defendant.

*ORDER GRANTING MOTION FOR PAR-TIAL SUMMARY JUDGMENT, GRANTING MOTION FOR SANC-TIONS, AND DENYING MOTION TO DISMISS*

MEANS, District Judge.

Pending before the Court is a Motion to Dismiss and Motion for Partial Summary Judgment filed by defendant Bell Helicopter Textron, Inc. ("BHT") on April 7, 1992, and a Motion for Sanctions filed by BHT on May 26, 1992. BHT seeks summary judgment or dismissal of Plaintiff's claims under the Texas Free Enterprise and Antitrust Act of 1983, Tex.Bus. & Com.Code §§ 15.01–.51 and various common law claims asserted in Plaintiff's First Amended Complaint. After careful consideration of said motions, responses, reply, surreply, and all evidence submitted in support thereof, this Court is of the opinion that the motion for partial summary judgment and motion for sanctions are meritorious and should be GRANTED, and that because the Court looks to matters outside the pleadings, the motion to dismiss should be DENIED.

I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed.R.Civ.P. 56, summary judgment is appropriate if the movant establishes, through the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). BHT has supported its motion for summary judgment with pleadings; the affidavit of K. Roger Williams; excerpts from the depositions of George Powell, Ray Kennedy, K. Roger Williams, and William O. Osborn; portions of business records of Schick Shadel Hospital; and various documents of BHT.

When the moving party has carried its summary judgment burden, the respondent "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The respondent must produce evidence, not merely argument, in response to a movant's properly supported motion for summary judgment. *See Foval v. First Nat'l Bank of Commerce,* 841 F.2d 126, 129 (5th Cir.1988); *Martin v. John W. Stone Oil Distrib., Inc.,* 819 F.2d 547, 549 (5th Cir.1987). The introduction of a mere scintilla of evidence is not sufficient to avoid summary judgment. Rather, the non-movant must come forward with sufficient evidence that, if admitted at trial, a verdict in his favor would be possible. *See Spiller v. Ella Smithers Geriatric Ctr.,* 919 F.2d 339, 343 (5th Cir.1990). Plaintiff, the non-moving party, has responded to Defendant's motion by presenting his pleadings on file; excerpts from the depositions of Osborn, George Powell, and K. Roger Williams; and the declaration of William O. Osborn.

## II. SUMMARY OF THE FACTS

Because this Court set out a detailed description of the facts of this case in its June 24, 1993 memorandum opinion and order, only a summary of the facts is provided here. Defendant BHT, headquartered in Tarrant County, Texas, is in the business of manufacturing, distributing, and servicing helicopters worldwide. Its customers are both military and commercial users of helicopters. BHT employed plaintiff William O. Osborn in its Customer Service and Support Division. Osborn's job duties required him to plan, budget, staff, train, and direct a worldwide staff of customer support representatives ("CSRs").

Prior to 1989, BHT employed as many as 46 CSRs throughout the world. In 1987, three persons, including Osborn, shared supervisory responsibility over the CSRs. By June 1989, BHT determined that it could function efficiently with only one supervisor over the CSRs. This decision was made for two reasons: 1) BHT's continuing efforts to streamline its operations, and 2) the number of CSRs had shrunk to just 23 or 24.

On June 2, 1989, BHT terminated Osborn and retained Vaughn Corneby as the sole supervisor of the CSRs. Shortly after Osborn's separation from BHT, he formed two businesses, Worldwide Helicopters, Inc. ("Worldwide") and Centralized Procurement Services. Each business was intended to market products and services to owners and prospective purchasers of helicopters. Osborn then contacted CSRs who were still employed by BHT and sought to enlist them as sales representatives on behalf of his own company.

Osborn's communications to the CSRs were sent without BHT's knowledge or approval and were transmitted via BHT's "Quik–Com" computer system. Quik–Com is a communications network, established at Osborn's initiative while he was working at BHT, to transmit and access messages worldwide at BHT-established terminals. During August and September 1989, Osborn admits sending at least fifteen to twenty unauthorized communications to CSRs through the Quik–Com system in the Middle East, Far East, and elsewhere, for the purpose of inducing BHT employees to breach their duty of loyalty to BHT and represent Osborn's new business. In October 1990, BHT learned of Osborn's unauthorized communications and notified its CSRs that company policy prohibited them from representing other interests while dealing with BHT customers.

Osborn re-applied for a position with BHT in November 1990, but did not receive an offer of employment. This Court issued summary judgment against Plaintiff's age discrimination and retaliation claims in a June 24, 1993 opinion and order. Remaining are Plaintiff's antitrust and common law claims, as well as Defendant's counterclaims (only Plaintiff's claims are addressed in this opinion).

## III. NO GENUINE ISSUE OF MATERIAL FACT IN DISPUTE

### A. Antitrust Claim

■ Osborn purports to bring a claim against BHT under the Texas Free Enterprise and Antitrust Act of 1983, Tex.Bus. & Com.Code § 15.01–.51, apparently for damages suffered by the businesses in which he holds or held an ownership interest. Osborn alleges that BHT "enter[ed] into and attempt[ed] to enforce an agreement not to compete which is a restraint of trade." Osborn's claim, however, fails for several reasons. First, the law is clear that Osborn lacks standing to bring an antitrust claim on behalf of Worldwide. *Solinger v. A & M Records, Inc.,* 718 F.2d 298, 299 (9th Cir. 1983). Even Assuming that Worldwide, a business in which Osborn has or held ownership interests, were in competition with BHT, this corporation, not Osborn personally, would be the party suffering any antitrust injury for which a suit might be brought. Shareholders, officers, and directors cannot personally assert antitrust claims against a corporation's competitors.

> The convenience and immunities that arise from doing business through corporate entities carry with them the cost of having these corporate entities seek their remedies in court for injuries to their business

or property interests. A shareholder of a corporation injured by antitrust violations has no standing to sue in his or her own name. . . .

*Solinger,* 718 F.2d at 299.

■ Moreover, Osborn's antitrust claim is without merit even if Osborn intended, as he now argues in his response, to assert the antitrust allegations on behalf of Centralized Procurement Services, which he owns as a sole proprietor. For several alternative reasons, the antitrust claim is invalid: the parties never had a contract not to compete; if they did have a contract, it was reasonable; if it was unreasonable, Plaintiff has not shown harm.

■ First, the BHT policy found in its personnel rules, denominated "Post–Employment Conflicts of Interest Applicable to Former BHTI Employees" ("the Policy"), is not a non-competition agreement; in fact, it is not even an agreement. It is not a non-competition agreement because the Policy does not relate in any way to competition with BHT; it states only a prohibition against former employee involvement with sales to BHT for a period of two years. The Policy has not been shown to be a binding legal agreement by evidence of either a signed contract or a verbal covenant. It appears to be no more than a statement of policy applicable to former employees. In addition, an agreement not to compete, like any contract, must be supported by consideration. Under Tex.Bus. & Com.Code § 15.- 50(1), a covenant not to compete must be ancillary to an otherwise enforceable agreement, or if "executed on a date other than the date on which the underlying agreement is executed, such covenant must be supported by independent valuable consideration." *Id.* Thus, Plaintiff must present evidence of either an ancillary agreement or independent consideration. Neither has been presented, which leaves the Court to assume that the only agreement between Plaintiff and Defendant was that of at-will employment. At-will employment which includes a non-competition agreement does not constitute an "otherwise enforceable agreement" within the meaning of § 15.50. *See Zep Mfg. Co. v. Harthcock,* 824 S.W.2d 654, 659 (Tex.App.—Dallas 1992) ("employment- at-will contract is not otherwise enforceable agreement") (citations omitted) (dicta). The Court finds, therefore, that a non-competition contract did not exist between Plaintiff and Defendant.

■ In addition, even if the Court found a contract between the parties, Plaintiff must raise a genuine issue of material fact as to the reasonableness of the agreement. Subsection (2) of § 15.50 provides that a non-competition agreement may be valid if it "contains reasonable limitations as to time, geographical area, and scope of activity to be restrained that do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." *Id.* The business interest of Defendant's policy is to prevent former employees from capitalizing on personal contacts and inside information gained during BHT employment. The Court finds that this is a legitimate business interest, and that as a matter of law the Policy's two-year restriction on post-employment involvement with sales to BHT does not impose a greater restraint than is necessary to protect that interest.

■ Lastly, Plaintiff does not allege any harm resulting from the Policy. The pertinent provision of the Policy states that "[f]or two years after ceasing employment with BHTI, [former employees are] prohibited from selling to BHTI." Several examples of "selling," both directly and indirectly, are provided, as well as examples of what is not considered selling. Nowhere does Plaintiff allege that he sought to sell to BHTI, but was prevented from doing so because of the Policy.

B. Tortious Interference with Contractual & Business Relations

■ Osborn's claim of tortious interference with contractual and business relations also fails for lack of standing. Osborn admits that the business allegedly interfered with was that of Worldwide: "[D]efendant interfered with plaintiff's efforts to do business through the Worldwide Helicopter Support Inc. and attempted to enforce a no-

competition agreement with plaintiff." This claim, like the antitrust claim, belongs to Worldwide and not Osborn. Accordingly, Osborn cannot sue upon it.

 In addition, BHT did not owe Osborn a duty to permit him to solicit BHT employees to market products on his behalf or on behalf of his companies. In his complaint, Osborn alleges that he "communicated with Defendant's Customer Service Representatives at their field locations through the use of Defendant's private communication system, which he had helped set up." The undisputed facts reveal that Osborn's purpose in these communications was to solicit BHT employees to market, on his behalf, products sold by Osborn's companies. The CSRs would be compensated for marketing products and services similar to BHT's. The facts also reveal that, in response to Osborn's unauthorized efforts, BHT reminded its employees that they owe exclusive loyalty to BHT and that company policy prohibits them from marketing on behalf of other companies while employed by BHT. This Court finds that BHT has no duty to permit another business to access its employees, through BHT's private communication system or otherwise. BHT's failure to promote such access by means of its own communications systems cannot be tortious.

### C. Infliction of Emotional Distress

 Finally, this Court finds that Osborn's allegations of intentional infliction of emotional distress and negligent infliction of emotional distress are without merit. One of the elements of the tort of intentional infliction of emotional distress is the performance of an "outrageous act." As a matter of law, the mere discharge of an employee is not an outrageous act. *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir.1991); *Guthrie v. Tifco Indus.*, 941 F.2d 374, 378 (5th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992). As a result, Plaintiff has no intentional infliction claim relating to his termination. Plaintiff's allegations that Defendant's conduct subsequent to his termination amounts to intentional infliction of emotional distress are also completely without merit. Those claims stem from Plaintiff's contention that Defendant "informed all customer service representatives not to conduct any business with Plaintiff." Plaintiff has produced no evidence to support this allegation. Defendant's October 26, 1989 letter to all CSRs, upon which Plaintiff's contention is presumably based, simply advises CSRs that to assist other companies in selling products and services related to BHT's is against company policy. This can hardly be considered outrageous conduct.

 Osborn also alleges that BHT was negligent in terminating his employment and that such negligence caused him emotional distress. No cause of action exists in Texas for the negligent infliction of emotional distress. *Valenzuela v. Aquino,* 853 S.W.2d 512 (Tex.1993); *Boyles v. Kerr,* 855 S.W.2d 593 (Tex.1993). Even prior to these recent cases clarifying an admittedly volatile area of Texas law, it was clear that no cause of action existed for negligent infliction in the context of employer-employee relations. *Conaway v. Control Data Corp.,* 955 F.2d 358, 361 (5th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 186, 121 L.Ed.2d 131 (1992), *citing Fiorenza v. First City Bank–Central,* 710 F.Supp. 1104, 1105 (E.D.Tex.1988); *Williams v. Sealed Power Corp.,* 1990 WL 102799, 1990 U.S. Dist. LEXIS 3629 (N.D.Tex. Jan. 8, 1990); *accord Wood v. Usco Distribution Svcs. Inc.,* 1992 WL 533057 1992 U.S. Dist. LEXIS 8204 (N.D.Tex. January 23, 1992). The recent Texas Supreme Court cases hold that although there is no general duty not to negligently inflict emotional distress, mental anguish damages may be recovered in connection with the breach of some other legal duty. Because this Court finds, pursuant to this order as well as that issued June 24, 1993, that as a matter of law Defendant has not breached a legal duty owed to Plaintiff, the claim for negligent infliction must fail.

### IV. RULE 11 SANCTIONS

 Fed.R.Civ.P. 11 "places three duties on counsel: (1) counsel must make a reasonable investigation into the factual basis of any pleading, motion, or other paper; (2) counsel must make a reasonable inquiry into the law; and (3) counsel must not sign a

pleading, motion, or other paper intended to delay proceedings, harass another party, or increase the costs of litigation." *St. Amant v. Bernard,* 859 F.2d 379, 382 (5th Cir.1988). All of the above obligations are independent duties of the signing attorney, so Rule 11 is violated if any one of them is breached. *Thomas v. Capital Sec. Services, Inc.,* 812 F.2d 984, 988 (5th Cir.1987), *aff'd on reh'g,* 836 F.2d 866 (5th Cir.1988) (en banc).

On November 25, 1991, Osborn filed his motion for leave to file his first amended complaint and attached his proposed amended complaint as an exhibit to the motion. Included among the amendments to his complaint were alleged violations of Texas antitrust law and a common law claim for tortious interference with business relations. On December 12th, BHT responded to Osborn's motion and, with regard to the two counts noted above, pointed out that Osborn could not sue personally for injuries to Worldwide, for such claims could only be asserted by the corporation itself. Worldwide was not, and currently is not, a party to this lawsuit. BHT cited two cases that clearly reference this well-settled principle. Notwithstanding these authorities, Osborn filed a reply brief insisting upon his right to file his amended complaint. BHT responded again, once more urging that Osborn lacked standing to sue for injuries to Worldwide. On February 17, 1992, Osborn filed his first amended complaint and jury demand which contained the identical antitrust and tortious interference claims referenced above. BHT argues that Osborn signed and filed his first amended complaint which improperly asserts claims belonging only to Worldwide in knowing violation of Rule 11 and 28 U.S.C. § 1927.

On April 7, 1992, BHT filed its motion to dismiss and motion for partial summary judgment, again attacking Osborn's lack of standing to assert claims on behalf of Worldwide. On April 28th, counsel for BHT traveled from Dallas to Austin at significant expense for the purpose of deposing George Morgan, a former vice president and treasurer of Worldwide, regarding the claims asserted by Osborn on behalf of Worldwide. On May 11th, Osborn responded to BHT's motion to dismiss and motion for partial summary judgment and admitted that "plaintiff's complaint contains an error in the entity to which the damage has been inflicted upon." This Court finds that Plaintiff's attorney's continued assertion of frivolous claims rises to the level of a Rule 11 violation.

Notwithstanding BHT's repeated reference to legal authorities that Osborn lacked standing to assert Worldwide's claims, Osborn stubbornly filed his amended complaint and thereby knowingly advanced frivolous claims. Only after these motions became ripe, BHT had gone to the expense of deposing George Morgan, and the Court had expended resources considering the issues, did Osborn seek leave of Court to replead the causes of action on behalf of Centralized Procurement Services. Based on the foregoing, this Court can only infer that Osborn toyed with the Court and BHT for over a year, first knowingly asserting a frivolous claim belonging to a non-party and then, to avoid dismissal, repleading his case on behalf of a new entity in hopes of keeping his case alive. Such gamesmanship offends the Rules, places in question the merit of Osborn's case, and demonstrates a cavalier lack of candor with this Court. Accordingly, Defendant is awarded expenses incurred in connection with the deposition of George Morgan in the amount of $3,010.87 plus post-judgment interest.

## IV. CONCLUSION

It is, therefore, ORDERED that Defendant's motion for summary judgment on Plaintiff's claims under the Texas Antitrust Act, tortious interference with business relations, intentional infliction of emotional distress and negligent infliction of emotional distress is GRANTED, and the motion to dismiss is DENIED.

It is further ORDERED that Defendant's motion for sanctions is GRANTED and that Osborn shall pay costs incurred by BHT in connection with the deposition of George Morgan on April 28, 1992 in the amount of $3,010.87 plus postjudgment interest of 3.58 percent per annum from the date of this judgment until paid.

SO ORDERED.